Argued and submitted July 3, 1985, reversed and remanded on breach of fiduciary
duty, otherwise affirmed April 30, 1986

# WALLACE et al,
*Appellants,*

*v.*

# HINKLE NORTHWEST, INC. et al,
*Respondents.*

## (A8209-05797; CA A32018)

717 P2d 1280

Beth E. Marks, Wilsonville, argued the cause for appellants. On the briefs were Michael E. Kohlhoff and Michael E. Kohlhoff & Associates, Wilsonville.

Thomas C. Sand, Portland, argued the cause for respondents. With him on the brief were Gregory A. Chaimov and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiffs brought this action against a stockbroker and his employer for violation of various security laws and rules, fraud and breach of fiduciary duty. The court granted defendants' motion for partial summary judgment on plaintiffs' breach of fiduciary duty claim, ORCP 47, and denied plaintiffs' motion to amend their complaint to replead the claim. The court submitted plaintiffs' other claims to the jury, which returned a verdict for defendants. The court entered judgment for defendants on all claims, and plaintiffs appeal.

Defendant Gimbol is Wallace's nephew and was a stockbroker for defendant Hinkle Northwest, Inc. In September, 1976, Wallace, through Gimbol, opened an account with Hinkle for the college education of her granddaughter, Brandy Wyttenburg. In October, 1980, she opened two more accounts—one for her daughter, Sheila Wyttenberg, and the other for another granddaughter, Tracy Wyttenberg. During 1981, all of the accounts suffered losses. Wallace accused Gimbol of misconduct in his handling of her accounts, and he resigned as her stockbroker on October 1, 1981. Thereafter, Wallace liquidated her holdings.

■ In their first assignment, plaintiffs assert that the court erred (1) in granting defendants' motion for partial summary judgment on their claim for breach of fiduciary duty and (2) in refusing to allow them to amend the claim. The court's refusal to allow plaintiffs' amendment was premised on its conclusion that, on the basis of the record then before it, the amended fiduciary duty claim could not withstand summary judgment. Although we generally review a court's denial of a motion to amend only for abuse of discretion, when the denial results from a substantive legal conclusion, we review the correctness of that conclusion. *Bank of Oregon v. Independent News,* 65 Or App 29, 37, 670 P2d 616 (1983), *aff'd* 298 Or 434, 693 P2d 35 (1985). Accordingly, in determining whether the court correctly denied plaintiffs' motion to amend, we must decide whether an amended claim supported by the record then before the court could have withstood a motion for summary judgment. If it could, the court's refusal to allow plaintiffs to amend was error. The proffered amendment contains the stronger statement of the breach of fiduciary duty claim, and we look to it first. If the court's decision

denying the amendment was correct, its grant of defendants' motion for partial summary judgment on the unamended claim was also correct.

In their amended claim for breach of fiduciary duty, plaintiffs would allege:

"At all material times hereto, defendants owed a fiduciary duty to plaintiffs by reason of the fact that 1 defendant Gimbol exercised discretionary control over plaintiffs' accounts in one or more of the following particulars:

"(1) Defendants exercised discretionary control by express agreement.

"(2) At the time she opened her accounts, plaintiff Dorothy Wallace was an elderly woman nearing retirement who had placed her savings in a Keogh Account and who had a limited income, and plaintiffs Brandy Wyttenberg, Tracy Wyttenberg and Sheila Wyttenberg were all minors.

"(3) Plaintiffs were unsophisticated investors without prior securities experience, who influenced by their blood relationship to defendant Gimbol and by defendant Gimbol's knowledge and experience, placed their full trust and confidence in defendant Gimbol.

"(4) Most or all securities transactions were entered into upon defendant Gimbol's recommendation.

"(5) Most or all securities transactions were entered into by defendant Gimbol without either prior approval or acquiescence by plaintiffs; or, if prior approval or acquiescence was obtained, said prior approval or acquiescence was not knowledgeably made and was not made after full disclosure by defendant Gimbol.

"(6) To the extent defendant Gimbol provided information to plaintiffs, said information was not fully provided and was neither truthful nor accurate."

Those allegations were each supported by Wallace's deposition testimony, which was before the court.

Defendants rely on *Berki v. Reynolds Securities, Inc.,* 277 Or 335, 560 P2d 282 (1977), in support of their argument that they did not owe plaintiffs a fiduciary duty. In *Berki* the court stated:

"The written agreements between plaintiff and defendants state specifically that the defendants could neither exercise discretion over the accounts nor manage them. Further, the

agreements provided that plaintiff would hold defendants harmless for any losses incurred. The plaintiff testified that he was not going to entrust to the broker the judgment of how he should hold something which was going down.

"The plaintiff failed to prove any facts which would give rise to a fiduciary relationship between him and the defendants. The agreement was at best an agreement by the broker to buy and sell at the direction of the plaintiff. A stockbroker acting as here is not a fiduciary. A broker's duty is complete and his authority ceases when a purchase or sale in accordance with the agreement is made and he has fully accounted." 277 Or at 341.

Defendants attempt to distinguish *Duniway v. Barton,* 193 Or 69, 237 P2d 930 (1951), upon which plaintiffs rely, arguing that in *Duniway* the defendants, who were also charged with a breach of fiduciary duty, were "investment advisers and financial consultants" rather than stockbrokers.

The record here, however, does not support application of a strict dichotomy between "stockbrokers" and "investment advisors," and the *Berki* case does not suggest that that distinction is decisive. The appropriate rule is:

"A fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Starkweather v. Shaffer,* 262 Or 198, 205, 497 P2d 358 (1972).

A stockbroker is a fiduciary if his client trusts him to manage and control the client's account and he accepts that responsibility. In *Berki v. Reynolds Securities, Inc., supra,* the plaintiff and his brokers agreed in writing that the brokers "could neither exercise discretion over the accounts nor manage them," and the plaintiff failed to prove that, in fact, the brokers exercised any control over the plaintiff's account. The court explicitly limited itself to those facts in holding that the brokers were not fiduciaries. 277 Or at 342.

Defendants argue that, like the account in *Berki,* Wallace's accounts were not "discretionary" and that Hinkle does not allow "discretionary accounts." The label that Hinkle applied to the accounts, however, is not controlling. Plaintiffs' allegations and Wallace's deposition testimony indicate that Wallace entrusted management of the accounts

to Gimbol and that he exercised substantial control over them. He advised Wallace extensively, and she almost always followed his advice. He often bought and sold securities without prior approval. He was her nephew, and he frequently told her that she should trust him to look after her interests. She was an inexperienced and unsophisticated investor, who was receiving no other financial advice. He was paid on commission, which gave him a personal interest in her transactions. Plaintiffs alleged and offered supporting testimony that showed that Gimbol occupied a position of trust. Although defendants offered contrary evidence, the proffered amendment and Wallace's deposition created a genuine issue of material fact as to the existence of a fiduciary relationship. Accordingly, the court was wrong in its substantive conclusion that the amended fiduciary claim could not withstand summary judgment, and, therefore, it erred in not allowing plaintiffs' amendment.

■    Defendants argue that, even if the court erred in denying leave to amend, the error was harmless, because the breach of fiduciary duty claim was redundant of the other claims. It was not, and plaintiffs were entitled to have it separately submitted to the jury. Moreover, the court refused to admit certain evidence at trial, specifically because the fiduciary duty claim was no longer in the case.[1] The court's error in denying the amendment was not harmless. Accordingly, we reverse as to the fiduciary duty claim.

Plaintiffs' other assignments of error are without merit. In the second assignment, plaintiffs argue that the court erred in limiting evidence at trial on the fraud and securities claims to events occurring after September 25, 1979. At trial, however, plaintiffs conceded that the substantive claims were limited to post-September 25, 1979, transactions, and the court allowed evidence of pre-September 25, 1979, events as background whenever plaintiff laid the requisite foundation.

■    In the third assignment, plaintiffs assert that the court erred in not allowing them to present evidence of other frauds allegedly committed by defendants. Evidence of other

---

[1] The court excluded evidence concerning Gimbol's failure to determine suitable investments for Wallace.

frauds is admissible to show intent, motive or scienter. OEC 404(3); *Karsun v. Kelley,* 258 Or 155, 482 P2d 533 (1971). Plaintiffs' proffered evidence, however, was not sufficiently probative of any of those issues to make the court's exclusion an abuse of discretion.

In the fourth assignment of error plaintiffs assert that the court erred in not excluding defendants' expert witness during the testimony of plaintiffs' expert. At trial, however, plaintiffs conceded that exclusion of an expert was discretionary with the court and offered no reason why defendants' expert should be excluded. The court did not abuse its discretion.

In assignments five, six and seven, plaintiffs argue that the court erred in striking certain claims from the original complaint and in refusing to allow them to present evidence on those claims. We have found no order of the court, however, that struck the claims. Moreover, plaintiffs do not set out the portions of the record that contain such a ruling. *See* ORAP 7.19. Accordingly, we will not consider the assignments further.

Finally, plaintiffs assert that the court erred in directing a verdict on claims that defendants misrepresented the market value of plaintiffs' holdings. We conclude, however, giving plaintiffs every favorable inference from the evidence, that the court's ruling was correct.

Reversed and remanded on the breach of fiduciary duty claim; otherwise affirmed.