Argued and submitted December 28, 1998, affirmed January 26, 2000

## 2606 BUILDING,
a partnership comprised of Donald C. Burdick,
Linda A. Burdick, Edgar E. Clark, M.D.,
and Gilbert W. Eklund,
*Respondents,*

*v.*

## MICA OR I INC.,
Outpatient Radiology Center,
a California limited partnership,
and US Diagnostics, Inc.,
*Appellants.*

(97F-915006; CA A100481)

994 P2d 1226

Timothy R. Volpert argued the cause for appellants. With him on the briefs were John F. McGrory and Davis Wright Tremaine LLP.

Charles M. Markley argued the cause for respondents. With him on the brief was Greene & Markley, P.C.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

■       In this forfeiture of a commercial lease action, defendants appeal the trial court's judgment in favor of plaintiffs. They assign error to the trial court's order denying defendants' motion under ORCP 23 A to file an amended answer containing the affirmative defense of excusable negligence and mistake, the trial court's failure to consider that defense on the merits, and the trial court's consequential entry of judgment in favor of plaintiffs. Because the trial court's ORCP 23 A ruling was based on a "substantive legal conclusion," we review for errors of law. *Wallace v. Hinkle Northwest, Inc.,* 79 Or App 177, 179, 717 P2d 1280 (1986). We affirm.

Plaintiffs are the lessors and defendants the lessees of a commercial property in Portland. The lease, entered into on November 1, 1984, was for a term of 15 years with three five-year options, for a potential total of 30 years. Defendants used the property for outpatient medical diagnostic imaging and related medical services. Under the lease, rent was to be paid monthly by the first of the month. If still past due after the tenth of the month, then late charges for that rent also became due. The parties' agreement designated defendants as the "insuring party," responsible for obtaining casualty insurance on the leased premises. The lease further provided that "if the insuring party shall fail to procure and maintain said insurance the other party may but shall not be required to procure and maintain the same, but at the expense of the Lessee." Paragraph 21 of the lease provided that "[a]ny monetary obligations of Lessee to Lessor under the terms of this Lease shall be deemed to be rent." In the summer and fall of 1997, defendants paid rent late for several months and accrued late fees. Also in September 1997, plaintiffs learned that defendants had failed to place casualty insurance on the leased premises. As a result, plaintiffs purchased insurance for the premises to fulfill defendants' obligation as the "insuring party."

On November 12, 1997, plaintiffs sent a letter to defendants demanding payment of the late charges and reimbursement for the cost of the insurance as "rent." Under

the lease, late payment of rent constitutes a default if not cured after three days following demand for the rent. The November 12 letter demanded payment by November 22, giving defendants ten days, rather than three days, to cure the breach. On November 19, 1997, defendants sent, via overnight letter delivery, a check for that rent. However, on November 25, the check was returned to defendants as undeliverable. Defendants asserted that, on receipt of the returned check, they learned that the envelope was misaddressed: the label read "464 Ridgeway Road" instead of "434 Ridgeway Road." Defendants further asserted that such mislabeling was due to a clerical typographical error. Defendants resent the rent to plaintiffs, but, in the interim after the November 22 deadline, plaintiffs filed this action. Defendants presented some evidence tending to show that they would suffer millions of dollars in damages if the lease was forfeited through this proceeding and that plaintiffs could be fully compensated for defendants' breach.

Pursuant to ORCP 23 A, defendants sought to file a second amended answer asserting an affirmative defense of excusable negligence and mistake alleging:

"Defendant's tender of payment would have been timely but for the placement of an erroneous address on the * * * shipping label. Upon notification of this error, defendant immediately sent full payment to plaintiff at the correct address.

"24.

"Any late payment was as a result of excusable negligence and mistake."

After hearing limited evidence on defendants' offer of proof on the matter, the trial court denied defendants' motion to file its second amended answer "because defendants' claims of excusable negligence and mistake fail to state defenses." In particular, the trial court held that, as a matter of law, "the affirmative defense does not state sufficient facts to amount to a defense because of a total lack of any suggestion that the plaintiff was somehow responsible for the [defendants'] mistake." The trial court granted plaintiffs' motion to strike several other of defendants' affirmative defenses and counterclaims contained in its amended answer and entered judgment in favor of plaintiffs. Defendants contend that the

trial court erred in denying defendants the opportunity to plead and prove, before entry of judgment, its affirmative defense of excusable negligence and mistake. They argue that the trial court erred in ruling that the affirmative defense could not, as a matter of law, apply to its unilateral mistake. The parties and the trial court agreed that the forfeiture arises out of the agreement between the parties rather than the FED statutes.

The jurisdiction of equity to relieve a lessee from forfeiture of a lease is well established:

> " '[W]here the breach of the tenant's covenant causing forfeiture of the term is due to excusable accident or mistake, this may constitute ground for equitable relief under the general power of equity to grant relief in the case of accident or mistake.' " *Caine v. Powell*, 185 Or 322, 330, 202 P2d 931 (1949) (quoting 32 Am Jur 756, *Landlord and Tenant*, § 892 (1942)).

Indeed, "[w]hen the failure to pay rent in accordance with the terms of the lease is due to excusable neglect equity will ordinarily refuse to decree a forfeiture of the lease." *Moore et ux v. Richfield Oil Corp.*, 233 Or 39, 47, 377 P2d 32 (1962). In all cases, however, relief from forfeiture may not be granted " 'unless it can be done with justice to the other party.' " *Caine*, 185 Or at 331 (quoting John Norton Pomeroy, 2 *Equity Jurisprudence*, § 451, 285 (5th ed 1941)). Relief must be based on the good faith intentions of the lessee to pay rent. *See* Pomeroy, 2 *Equity Jurisprudence*, § 452 at 292. It also depends to a great extent on each case's circumstances. *Caine*, 185 Or at 331. The Supreme Court specifically noted in *State Hwy. Comm. v. Demarest*, 263 Or 590, 601, 503 P2d 682 (1972), and in *Fry v. D. H. Overmeyer Co., Inc.*, 269 Or 281, 306, 525 P2d 140 (1974), that each case must be assessed in light of its own facts. Thus, in each case the court must assess whether a lessee's neglect is excusable and whether the circumstances otherwise permit equity to relieve the lessee. At issue in this case is whether defendants' unilateral mistake in misaddressing the rent payment was "excusable neglect or accident." *Id.* at 304.

The Supreme Court provided relief to the lessees in *Caine*, where the lessees were negligent in not reading the

lease that provided a 10-day grace period for late payments of rent. However, the lessees believed that they had a 30-day grace period based on an oral representation by the lessor's agent. Thus, the court was presented not with a mere "failure, unaccompanied by other circumstances calling for the interposition of a court of equity, to pay an installment of rent within the statutory time," but with proof that the "lessees were misled by a representation of the lessor's agent into believing that the lease provided for a longer period of time." *Id.* at 330. Similarly, in *Moore*, the Supreme Court granted relief to the negligent lessee who had been misled by its own agents. 233 Or at 46-47. In contrast, in *Grove v. The Hindquarter Corporation*, 45 Or App 781, 784, 609 P2d 840 (1980), we noted that the mistake of the lessee's manager in simply forgetting to pay the basic rent, "completely uninfluenced by [the lessors], is not such a mistake as will justify the intervention of equity in the action."

This case is more akin to *Grove* than to *Caine* or *Moore*. Defendants' mistake, while small, was nevertheless "completely uninfluenced" by plaintiffs, a third party, or other circumstances that might invite equitable intervention. We have noted that such unilateral mistakes, " *'nothing else appearing*, [are] no reason why a Court of Equity should grant relief.' " *Grove*, 45 Or App at 785 (quoting Joseph Story, 1 *Equity Jurisprudence*, § 161, 150 (14th ed 1918)) (emphasis added). Defendants urge us to distinguish *Grove* on its facts. However, we do not find a significant distinction between the negligence present in this case and the type of negligence in *Grove*. Both misaddressing the payment and forgetting to send the payment result in a unilateral failure to pay rent. Equity may not intervene in the absence of any circumstances that tend to excuse the negligence. The trial court properly denied defendants' motion to file an amended answer containing defendants' affirmative defense of excusable negligence and mistake.

Affirmed.