Argued and submitted June 7, reversed and remanded with instructions
September 26, 2001

Michael A. BECKER,
*Appellant,*

*v.*

Gregg PIEPER
and Deanne Pieper, husband and wife;
David H. Mallon;
Ralph W. McLenithan and Sharon D. McLenithan,
husband and wife;
Albert J. Farmer and Michele E. Farmer,
Trustees of the Farmer Loving Trust,
*Defendants,*

*and*

Michael D. MARRIOTT
and Shelly L. Marriott, husband and wife;
John M. Evasovic and Rita K. Evasovic,
husband and wife;
Brian W. Lackey and Aynn K. Lackey,
husband and wife;
and Mark Bolin,
*Respondents.*

98-11-39076; A110866

32 P3d 912

Kippy Roberson argued the cause for appellant. With him on the brief was Ricker and Roberson.

Justin D. Gericke argued the cause for respondents. With him on the brief were Laura A. Schroeder and Schroeder Law Offices, P. C.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges

SCHUMAN, J.

## SCHUMAN, J.

Plaintiff sold property to defendants, intending to retain the water rights so he could transfer them to other property he owned. When he discovered that he had, in fact, sold the water rights along with the land, he initiated this suit for reformation of contract, a judgment declaring that he owned the water rights, and a money judgment under a theory of unjust enrichment. Seven defendants, the respondents in this appeal, failed to appear, and plaintiff obtained default orders against them. The trial court ultimately granted the nondefaulting defendants' motions to dismiss the reformation and declaratory judgment claims and entered a judgment in their favor. Respondents, attempting to re-enter the case and participate in the favorable outcome, then moved for relief from the default orders. The trial court granted the motion and entered an ORCP 67 B judgment dismissing the two claims against respondents. Plaintiff appeals from the judgment in respondents' favor. We reverse and remand and instruct the trial court to enter a default judgment against respondents.

Plaintiff owned a 90-acre parcel of land near Union. His complaint alleges that he intended to transfer the water rights appurtenant to that parcel to other property he owned before subdividing and selling the 90-acre parcel. To that end, he initiated a water rights transfer with the Oregon Water Resources Department. Believing that this first step effectively severed the water rights from the land, plaintiff subdivided the parcel and sold some of the lots to defendants. Although he was unaware of it at the time, plaintiff's initiation of the water rights transfer did not suffice to transfer those rights prior to the various sales. Because none of the sales documents or deeds involved in those transactions contained any language reserving water rights to plaintiff, the appurtenant water rights transferred with the property to the new owners. ORS 540.510; *Teel Irr. Dist. v. Water Resources Dept.*, 323 Or 663, 668, 919 P2d 1172 (1996).

When plaintiff learned of this unintended result, he asked the new owners for permission to complete the water rights transfer. All refused. Plaintiff then initiated this

action seeking relief based on three claims: (1) a claim for reformation of the individual deeds by which the defendants acquired their respective parcels, so as to embody plaintiff's intention to retain certain water rights associated with the properties; (2) a claim for a judgment declaring that plaintiff owned the water rights at issue; and (3) in the alternative, a claim for damages against defendants, based on a theory of unjust enrichment, for the fair market value of the water rights. Seven of the defendants, respondents in this appeal, failed to answer or otherwise appear and plaintiff promptly secured default orders against them. He also obtained from four of them a signed document styled an "Acknowledgment of Reservation of Water Right" declaring that they recognized and acknowledged that the conveyance by which they purchased their lots reserved the appurtenant water rights to plaintiff.

Pursuant to agreements in the sales documents, the defendants who did appear (appearing defendants) entered into binding arbitration. The arbitrator found in their favor, against plaintiff, and the award was subsequently entered as a judgment. Shortly thereafter, respondents, including those who had signed the "Acknowledgment," moved that the court allow them to participate in the judgment. Relying on *Brooks v. Ballew*, 95 Or App 381, 768 P2d 941 (1988), and *State ex rel Everett v. Sanders*, 274 Or 75, 544 P2d 1043 (1976), the trial court granted that motion as to plaintiff's claims for reformation and declaratory judgment; the court concluded that, as to those two claims, respondents were "in the same legal and factual position as the non-defaulting defendants." The trial court's letter opinion explained its reasoning as follows:

"Oregon case law provides that a defaulted party is not necessarily precluded from obtaining a judgment in their favor. If a non-defaulting defendant prevails in the matter and the defaulting defendant is in the same legal position as the non-defaulting defendant, the defaulting defendant is entitled to the same judgment as the non-defaulting defendant. * * *

"As to the Plaintiff's claims for relief for reformation of deed and for declaratory judgment, the arbitrator concluded as follows:

> " 'Water rights are appurtenant to the land and normally transfer with the sale of the land. ORS [540.510]. Any diversion should have been very clearly spelled out in the written sales documents. This was not done and plaintiff is not now entitled to reformation of the deeds or a declaratory judgment.'

> "The sale documents for the defaulted defendants are attached to the complaint and they also fail to contain any language that would indicate a reservation of water rights to the plaintiff. They are in the same legal and factual position as the non-defaulting defendants."

The court denied the motion as to plaintiff's third claim, for unjust enrichment, and entered judgment accordingly.[1]

On appeal, plaintiff assigns error to the trial court's ruling that respondents were in the same legal position as the nondefaulted defendants.[2] He argues that each lot owner occupies a legal position that is distinct from each other owner because each entered into a separate sales agreement for his or her respective lot. Those sales agreements, plaintiff argues, were negotiated on different terms for each buyer. The evidence regarding the circumstances of each transaction, specifically whether the parties discussed and agreed to the reservation of water rights, varies from transaction to transaction and buyer to buyer. That evidence is central to plaintiff's reformation and declaratory judgment claims; to prevail on those claims, he must provide "clear, satisfactory and convincing" evidence that, with respect to each transaction, (1) there was an antecedent agreement to which the deeds could be reformed; (2) there was a mutual mistake, or a unilateral mistake and inequitable conduct on the part of each defendant; and (3) he was not guilty of gross negligence. *Shoulderblade v. Osborn,* 60 Or App 12, 16, 652 P2d 836 (1982). Evidence of the circumstances of each transaction

---

[1] The judgment dismissing plaintiff's reformation and declaratory judgment claims was properly entered as a final judgment under ORCP 67 B. The defaulted defendants later secured relief from default as to the unjust enrichment claim, and the parties proceeded to trial on that claim. That claim is not at issue in this appeal.

[2] Plaintiff also assigns error to the entry of judgment in respondents' favor without a finding of good cause for setting aside the default orders previously issued against respondents. *See* ORCP 69 C ("For good cause shown, the court may set aside an order of default[.]"). Given our resolution of plaintiff's first assignment of error, we do not reach the merits of that argument.

would be relevant to the alleged individual antecedent agreements that plaintiff would retain water rights associated with each lot and to plaintiff's claim that defendants each knew he or she would not be acquiring water rights and that each is now "wrongfully and inequitably" attempting to retain those rights. Plaintiff thus argues that each owner occupies a distinct legal position with regard to those claims. Respondents, on the other hand, argue that the trial court correctly concluded that they are in the same legal position as the appearing defendants and are therefore entitled to participate in the judgment.

■■ We begin with our standard of review. The parties contend that the judgment appealed from should be reviewed in the same manner as a relief from default, *i.e.,* for abuse of discretion. That standard is appropriate when the issue on appeal is whether a trial court's decision was within the limits of its legal discretion under ORCP 69 C. *See SAIF Corp. v. Harris,* 161 Or App 1, 7, 983 P2d 1066, *rev den* 329 Or 527 (1999). However, the core issue in this appeal is not whether granting the motion—and thus effectively relieving respondents from default—was within the range of the trial court's discretion. Respondents' motion requested that the trial court make a legal determination that they could re-enter the case because they occupied the same legal position as the nondefaulting defendants. Having so concluded, the trial court had no discretion to enter judgment other than in respondent's favor. *See Bronn v. Soules,* 140 Or 308, 313, 13 P2d 623 (1932) ("[W]here the defense interposed by answering defendant is * * * common to all * * * final judgment *must* be entered * * * in favor of the defaulting defendants." (quoting 78 ALR 938 (1932)) (emphasis added)). Thus, because granting respondents' motion resulted necessarily from a substantive legal conclusion, we review that legal conclusion for errors of law. *2606 Building v. Mica OR I Inc.,* 165 Or App 240, 242, 994 P2d 1226 (2000), *rev allowed* 331 Or 633 (2001); *Wallace v. Hinkle Northwest, Inc.,* 79 Or App 177, 179, 717 P2d 1280 (1986).

We begin by determining the contours of the legal rule on which the outcome of this case depends. The principle that a defaulting defendant may benefit from the successful defense advanced by a codefendant derives from *Frow v.*

*De la Vega*, 82 US 552, 21 L Ed 60 (1872). In *Frow*, the plaintiff sued eight defendants, alleging they were all participants in a "joint conspiracy to defraud"; one defendant defaulted but the remaining defendants prevailed at trial, securing a dismissal of the complaint. *Id.* at 553. The Court held it was error to enter a final order against a defaulting defendant while the case was still pending against his codefendants; such a posture might result in inconsistent judgments, a result it found "unseemly and absurd" in such a case "where the court is satisfied from the proofs offered by the other [appearing defendants] that in fact the plaintiff is not entitled to a decree." *Id.* at 554.

The rule from *Frow* appears in various formulations in several Oregon cases, a brief review of which is helpful in assessing its proper application here. In *Bronn*, a foreclosure action against multiple tenants in common who were jointly liable for the underlying debt, the court held that a defense of partial payment was not personal to the answering defendants but was equally applicable to those defendants who failed to appear. As authority for that holding, the court quoted from an annotation entitled *Successful Defense by One Codefendant, or a Finding for "Defendants" as Inuring to the Benefit of Defaulting Defendant*:

> "The courts are agreed with practical unanimity that in actions against several defendants jointly, where the defense interposed by answering defendant is not personal to himself (as is the defense of infancy, coverture, or bankruptcy on the part of the pleader), but common to all, as where it goes to the whole right of the plaintiff to recover at all, as distinguished from his right to recover as against any particular defendant, or questions the merits or validity of the plaintiff's entire cause of action in general, or his right to sue, such defense, if successful, inures to the benefit of the defaulting defendants both in actions at law and suits in equity, with the result that final judgment must be entered not merely in favor of the answering defendant, but also in favor of the defaulting defendants." 140 Or at 313, *quoting* 78 ALR 938 (1932).

*Bronn*, in turn, was subsequently applied to defendants holding separate interests in *State ex rel Everett*, a mandamus action in which the petitioners sought entry of

judgment against the defaulting defendants in the underlying action. In *Everett*, the petitioners had sought to remove certain judgment liens from their property. Four of the defendant creditors failed to answer while two successfully demurred on the basis that the complaint failed to state a claim. The court held that, in light of *Bronn*, ORS 18.080(1)(b) (1969), which authorized entry of default judgment "upon failure to answer," was inapplicable where "it has been demonstrated by judicial proceedings that the plaintiff is not entitled to relief against any defendant." 274 Or at 80. That was so despite the fact that the defendants did not hold a joint interest in the subject of the litigation because the defaulting defendants "occupied exactly the same legal position" as did the two demurring defendants. *Id.* at 81.

*Everett*'s proclamation that the rule applied to those occupying "exactly the same legal position" was further developed in *Hiatt v. Congoleum Industries, Inc.*, 279 Or 569, 569 P2d 567 (1977), where the court characterized the rule as applying "when an appearing defendant asserts a defense common to the other defendants." *Id.* at 571. The court held that an appearing defendant's demurrer attacking the complaint as improperly uniting several causes of action "did not go to the merit of plaintiff's claim" and thus did not provide grounds to set aside a codefendant's default. *Id.* at 572. Nor was a general verdict for one defendant grounds for setting aside that default when the pleadings disclosed a different theory of recovery against the appearing defendants from that pled against the defaulting defendants and where the appearing defendants raised defenses that, even if successful as to the claims against them, would not have absolved the defaulting defendants of liability. *Id.* at 573 ("We cannot find that because the jury found for [the appearing defendant] it necessarily would have found for [the defaulting defendant]. Therefore, we cannot conclude that the default judgment * * * must be set aside because of the jury verdict.").

Most recently, we relied on *Bronn* and *Everett* in *Brooks*. There, the plaintiffs had sued both the current and previous owner of property over which they claimed a prescriptive easement. The previous owner failed to appear, and the plaintiffs secured a default order against him. We held,

without elaboration, that, because the current owner had "appeared and prevailed on the merits of plaintiff's claim" and because "both defendants occupied the same legal position," the previous owner was nevertheless entitled to judgment in his favor despite the outstanding default order. *Brooks*, 95 Or App at 382.

■■ From those various applications, we conclude that to be "in the same legal position" as a codefendant means that, given the nature of the legal claims at issue and the relationship of the parties to one another, the grounds on which a successful defendant prevails will necessarily apply to a defaulting defendant with the same force and effect, *i.e.*, those grounds similarly would absolve the defaulting defendant of liability under the complaint as a matter of law. *Frow*, 82 US at 554; *Hiatt*, 279 Or at 572. Under that standard, we cannot conclude that, with respect to a defense against plaintiff's reformation claim, respondents occupy the "same legal position" as their codefendants who appeared and prevailed at the arbitration.

■ It is true, as the arbitrator and the trial court found, that the documents conveying property to respondents, as well as those conveying property to appearing defendants, facially failed to reserve water rights to plaintiff and for that reason sold the water rights with the land. That fact, however, cannot serve as the basis for defeating plaintiff's reformation and declaratory judgment claims. The gravamen of those claims was that language reserving water rights was mistakenly omitted from each deed under circumstances justifying the equitable remedy of reformation. It is no defense to a claim for reformation that the document plaintiff seeks to reform does not contain language giving him the rights he alleges were part of the original agreement. Indeed, it is precisely such an absence that an action for reformation is designed to remedy. "The purpose of reformation by a court of equity is to make an erroneous instrument express correctly the real agreement between the parties." *Manning Lumber Co. v. Voget*, 188 Or 486, 500, 216 P2d 674 (1950). The absence of language in a deed is not conclusive evidence of the lack of an antecedent agreement, justifiable mistake, or of any other element of proof required in a reformation action.

Those elements depend on facts that, in this case, may vary between or among appearing defendants and respondents. Each lot is held under a lot-specific deed, negotiated through individual transactions with one or more defendants. It is not implausible that some defendants, and not others, were sufficiently notified that no water rights would transfer with the land and agreed to that term. The "Acknowledgment" would suggest as much. From the pleadings, in fact, that seems to be the case. Plaintiff alleged that he or his agent so notified all defendants; those defendants who answered the complaint denied that allegation, but those who defaulted admitted the truth of it by virtue of their default. *See Rajneesh Foundation v. McGreer*, 303 Or 139, 142, 734 P2d 871, *mod on other grounds on recons* 303 Or 371, 737 P2d 593 (1987) (default establishes truth of factual allegations of complaint but does not admit that those facts state a valid claim). Moreover, each of the conveyances was executed at a different time; each contains specific conditions and provisions unique to the particular property transaction. Defendants are thus not all so similarly situated to each other that resolution of plaintiff's claims against one or even some of them would necessarily determine the validity of his claims against any, let alone all, of the others.

In other words, although all defendants occupy the same legal position with respect to whether or not their conveyances *as written* reserved water rights to plaintiff, that legal position is not essential, or even relevant, to their defense against plaintiff's reformation and declaratory judgment claims. With respect to those claims, respondents may well occupy quite different positions.

■ That conclusion, however, does not immediately resolve the case. Here, a complication arises because the trial court's original judgment in favor of appearing defendants was based on binding arbitration. It was the arbitrator who first erroneously concluded that plaintiff's reformation and declaratory judgment claims necessarily failed *because* the conveyances did not explicitly reserve water rights. In allowing respondents to participate in the judgment against appearing defendants, the trial court adopted the arbitrator's letter opinion, including its erroneous reasoning. If the arbitrator's reasoning as well as his conclusions were binding on the trial court, then we would necessarily conclude that the

court committed no legal error. The legal proposition the court inherited from the arbitrator would be a given, much like a jury's finding of fact. Under the terms of that legal proposition—"plaintiff's reformation claim is defeated because the conveyances did not reserve water rights"—respondents and appearing defendants *are* identically situated: The defense that succeeded for the appearing defendants necessarily and as a matter of law succeeds for respondents as well, because none of the conveyances reserved water rights.

■    On examination, that complication proves to be ephemeral. Although the trial court was obligated to accept the arbitrator's conclusions, it was not obligated to accept the reasoning. The arbitration clause of the conveyances reads:

> "All claims that have not been resolved by mediation, or otherwise, shall be submitted to final and binding private arbitration in accordance with Oregon Laws."

Oregon law, in particular ORS 36.365, provides that in situations such as this, where no objection is made to entering judgment after award,

> "judgment shall be entered according to the award and shall have the force and effect of a judgment obtained in the circuit court after default."

Circuit court default judgments do not ordinarily incorporate underlying legal rationales. Further, by way of analogy, neither a circuit court judgment nor a binding arbitration precludes relitigation of an issue unless that issue was litigated in a prior proceeding between the same parties and the particular issue was essential to the prior decision. *Drews v. EBI Companies,* 310 Or 134, 139-40, 795 P2d 531 (1990); *Helton v. Phillips,* 155 Or App 217, 223-24, 963 P2d 100 (1998). Here, respondents did not participate in the arbitration, and, more to the point, the judgment dismissing plaintiff's reformation and declaratory judgment claims against appearing defendants could have been reached on a variety of bases other than the erroneous one the arbitrator used. Thus, the trial court was not bound to the arbitrator's faulty legal analysis. It was bound to enter judgment in favor of nondefaulting defendant in accord with the arbitrator's decision, but, in determining whether nondefaulting defendant and respondents were in the same legal position, it had an independent

responsibility to analyze their respective positions in light of the correct legal analysis.

The Supreme Court's decision in *Hiatt v. Congoleum Industries, Inc.*, although not precisely on point, presents a compelling comparison. Congoleum and another defendant were sued over allegedly defective floor covering they had sold plaintiff. Congoleum suffered a default judgment. The appearing defendant offered two affirmative defenses. The jury returned a general verdict against plaintiff, and Congoleum, like respondents in this case, moved to set aside the default, arguing, again like respondents here, that "the ground upon which the successful defendant prevailed would necessarily have caused the defaulting defendant to have prevailed." 279 Or at 572. We affirmed the trial court's denial of the motion, holding that because it had no way of knowing which of the appearing defendant's affirmative defenses provided the rationale for the jury's verdict, it could not say that the same rationale would apply against Congoleum:

> "We cannot find that because the jury found for [the appearing defendant] it necessarily would have found for Congoleum. Therefore, we cannot conclude that the default judgment against Congoleum must be set aside because of the jury verdict in favor of [the appearing defendant]." *Id.* at 573.

Under the circumstances of this case, a general jury verdict and an arbitrator's award are analogous. Both embody ultimate decisions that the trial court is generally constrained to incorporate into its judgment. In both, the reasoning that leads to the ultimate decision is relevant and preclusive only if it is essential to the ultimate decision. Just as the trial court in *Hiatt* would have erred had it adopted a nonessential rationale imputed to the jury and relieved Congoleum of default because that rationale applied to Congoleum as well, so too the trial court here erred when it adopted the arbitrator's erroneous and nonessential rationale and relieved respondents of default because that rationale applied against respondents as well.

Reversed and remanded with instructions to enter default judgment against respondents on plaintiff's first and second claims.