Argued and submitted October 4, 2001, decision of Court of Appeals and judgment of district court reversed and case remanded to circuit court May 31, 2002

2606 BUILDING,
a partnership comprised of
Donald C. Burdick, Linda A. Burdick,
Edgar E. Clark, M.D., and Gilbert W. Eklund,
*Respondents on Review,*

*v.*

MICA OR I INC.;
Outpatient Radiology Center,
a California limited partnership;
and US Diagnostics, Inc.,
*Petitioners on Review.*

(97F-915006; CA A100481; SC S47555)

47 P3d 12

Timothy R. Volpert, of Davis Wright Tremaine LLP, Portland, argued the cause and filed the petition for petitioners on review. With him on the petition was John F. McGrory.

Charles R. Markley, of Greene & Markley, PC, Portland, argued the cause and filed the brief for respondents on review. With him on the brief was M. Elizabeth Duncan.

BALMER, J.

**BALMER, J.**

The issue in this commercial lease case is whether a lessee's unilateral mistake may constitute the equitable defense of excusable neglect to a forcible entry and detainer (FED) action based on the lessee's late payment of rent. The trial court denied the motion of the lessees (defendants) to file an amended answer raising the defense, declined to consider the defense on the merits, and entered judgment in favor of the lessors (plaintiffs). The Court of Appeals affirmed. *2606 Building v. MICA OR I Inc.*, 165 Or App 240, 994 P2d 1226 (2000). For the reasons that follow, we reverse the decision of the Court of Appeals and the judgment of the trial court and remand the case to the trial court for further proceedings.

## I. FACTS

Plaintiffs own a commercial building in Portland. Defendants are three related entities that leased the building from plaintiffs under a written lease agreement. The lease required defendants to pay rent monthly by the first of the month. If plaintiffs did not receive rent and other required payments within 10 days after the due date, defendants owed a late charge. The lease also obligated defendants to obtain insurance on the property and, if they failed to do so, the lease authorized plaintiffs to obtain the insurance at defendants' expense. The lease further provided that "[a]ny monetary obligations of [defendants] to [plaintiffs] under the terms of this lease shall be deemed to be rent." If defendants failed to pay rent or make other required payments when due, and failed to cure after three days' written notice from plaintiffs, the lease deemed defendants in "material default and breach" of the lease, and plaintiffs could terminate defendants' right of possession.

The parties entered into the lease as of November 1, 1984. The lease was for a 15-year term and provided for three optional five-year extensions. During 1997, defendants paid the rent late on several occasions and accrued late fees. In September 1997, plaintiffs learned that defendants had failed to obtain the required insurance for the premises; plaintiffs therefore purchased the insurance. Plaintiffs sent a letter to defendants dated November 12, 1997, demanding

payment of the accrued late charges and reimbursement for the cost of the insurance. Notwithstanding the three-day cure period set out in the lease, plaintiffs' letter gave defendants 10 days to cure and stated that, if plaintiffs did not receive payment, then defendants' tenancy would terminate effective November 30, 1997. Plaintiffs did not receive payment by November 30, and the following day they commenced this action under the FED statute, ORS 105.105 to ORS 105.168.

During the proceedings in the trial court, defendants sought leave to file a second amended answer that alleged the following facts. On November 19, 1997, defendants sent by overnight mail, through a commercial delivery service, a check for the amount demanded in plaintiffs' November 12 letter. The commercial mail delivery service attempted delivery on November 20, November 24, and November 25. Following the final attempted delivery, the delivery service returned the check to defendants as undeliverable. Defendants alleged that the check was not delivered because of a typographical error: they mistakenly had addressed the envelope to "464 Ridgeway Road" instead of "434 Ridgeway Road." Defendants alleged that the check was delivered to plaintiffs shortly after December 1, 1997, but plaintiffs refused to accept the check.

On the basis of those allegations, defendants sought to raise an affirmative defense to the FED complaint, arguing that their late payment of rent because of the misaddressed envelope was an inadvertent mistake and constituted the equitable defense of excusable neglect. The trial court held that such a unilateral mistake was not a defense to an FED action. Accordingly, the trial court denied defendants' motion to file a second amended answer raising that affirmative defense and granted plaintiffs' motion to strike various related affirmative defenses in the amended answer. The court granted plaintiffs possession of the property and entered judgment in their favor.

The Court of Appeals affirmed. It noted that courts have equity jurisdiction to relieve a lessee from forfeiture of a lease and framed the issue before it as whether "defendants' unilateral mistake in misaddressing the rent payment was

'excusable neglect or accident.' " *2606 Building*, 165 Or App at 244 (quoting *Fry v. D.H. Overmyer Co., Inc.*, 269 Or 281, 304, 525 P2d 140 (1974)). Because defendants' allegations demonstrated that the mistake in misaddressing the rent payment was solely defendants' responsibility and was uninfluenced by plaintiffs or any third party, the court concluded that the equitable defense was not available to defendants. *2606 Building*, 165 Or App at 245.

■     On review, the issue is whether defendants' allegations regarding their mistake are sufficient to raise the equitable defense of excusable neglect to plaintiffs' FED action.[1] If so, the trial court should have allowed defendants to raise the defense and then proceeded to determine whether, based on all the facts, defendants' failure to pay the rent was excusable and, if it was excusable, whether it nevertheless would be equitable to permit the forfeiture of the lease.[2]

## II.   ANALYSIS

### A.   *Background and Parties' Arguments*

This court has recognized the equitable defense of excusable neglect when a landlord seeks to terminate a commercial lease for failure to make timely rent payments. *See Moore v. Richfield Oil Corp.*, 233 Or 39, 47, 377 P2d 32 (1962)

---

[1] Defendants identified the affirmative defense as "excusable negligence and mistake." The courts below and decisions of this court describe that defense variously as "excusable accident," "unilateral mistake," and "excusable neglect," among other terms. Although "unilateral mistake" accurately describes the inadvertent error that defendants allege here, we prefer to avoid using the term "mistake" to identify the defense because, in contract law, that term often is used in connection with contract formation issues. The specific issue in this case is whether the error that defendants allege constitutes the equitable defense known as excusable neglect. For purposes of consistency, we use the term "excusable neglect" to identify this defense, as this court did in *Moore v. Richfield Oil Corp.*, 233 Or 39, 47, 377 P2d 32 (1962).

[2] Plaintiffs assert that this case is moot because the lease expired after the Court of Appeals issued its decision. We disagree. The trial court awarded attorney fees as provided in the lease, and that award depends on the correctness of the trial court judgment. *See Pacific N.W. Dev. Corp. v. Holloway*, 274 Or 367, 546 P2d 1063 (1976) (FED action not moot, even after lessee surrendered possession of property, because attorney fee award was reviewable on appeal and right to attorney fees depended on correctness of judgment). Because the attorney fees award is still in controversy and a decision from this court will have a "practical effect on the rights of the parties," *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993), the case is not moot.

("When the failure to pay rent in accordance with the terms of the lease is due to excusable neglect equity will ordinarily refuse to decree a forfeiture of the lease."); *Caine v. Powell*, 185 Or 322, 330, 202 P2d 931 (1949) (" '* * * [W]here the breach of the tenant's covenant causing a forfeiture of the term is due to excusable accident or mistake, this may constitute ground for equitable relief under the general power of equity to grant relief in the case of accident or mistake.' " (citation omitted)).

Plaintiffs argue that those and similar cases allow an equitable defense only when the lessor induced the mistake or when the lessor knew or reasonably should have known of the mistake. In *Caine*, for example, this court granted relief from foreclosure to lessees whose rent payment was late. Although the lease provided for a 10-day grace period, the lessees thought that they had a 30-day grace period based on a representation made by the lessor's agent. 185 Or at 327-28.

Plaintiffs contrast cases like *Caine* with those cases (including the present one) in which the mistake or error was solely the lessee's fault. Plaintiffs argue that, in the latter cases, equitable relief from forfeiture is unavailable. In particular, plaintiffs argue that we should adopt the rationale of the Court of Appeals' decision here, which relied on its earlier decision in *Grove v. The Hindquarter Corporation*, 45 Or App 781, 609 P2d 840 (1980). In *Grove*, a lessee's new manager had forgotten to pay the rent when it was due. The Court of Appeals, citing an equity treatise, held that forgetfulness "was not the kind of 'mistake' for which equity supplies a remedy * * *." 45 Or App at 785.

From the foregoing cases, plaintiffs derive a rule that a lessee may not raise its own unilateral mistake, unknown to and uninduced by the lessor, as an equitable defense in an FED or lease foreclosure proceeding. Plaintiffs also rely on the same treatise that the Court of Appeals cited in *Grove* and in this case:

"In cases where the parties deal with each other at arms' length, and there is no mistake caused by the misconduct of the other party, and especially where the parties

have had ample time to consider their own business mat-
ters of importance, and a mistake is made innocently, this
fact, nothing else appearing, is no reason why a Court of
Equity should grant relief."

Joseph Story, 1 *Equity Jurisprudence* § 161, 150 (14th ed
1918). *See 2606 Building*, 165 Or App at 245; *Grove*, 45 Or
App at 785 (both quoting Story). Consistent with their pro-
posed rule, plaintiffs argue that defendants' late payment in
response to the November 12, 1997, demand letter cannot be
the basis for an equitable defense, because the untimeliness
of the payment was due solely to defendants' own error in
addressing the envelope.

Finally, plaintiffs assert that their position is consis-
tent with an Oregon statute that provides for termination of
a tenancy when a tenant fails to pay rent in accordance with
the terms of the lease. ORS 91.090 provides:

"The failure of a tenant to pay the rent reserved by the
terms of the lease for the period of 10 days, unless a differ-
ent period is stipulated in the lease, after it becomes due
and payable, operates to terminate the tenancy. No notice
to quit or pay the rent is required to render the holding of
such tenant thereafter wrongful; however, if the landlord,
after such default in payment of rent, accepts payment
thereof, the lease is reinstated for the full period fixed by its
terms, subject to termination by subsequent defaults in
payment of rent."

Plaintiffs argue that, because defendants failed to pay the
rent within 10 days after it was due, defendants' tenancy
automatically terminated.

B. *Role of ORS 91.090*

We turn first to the role, if any, that ORS 91.090
plays in this case. If the effect of that statute is to terminate
defendants' tenancy, then the cases discussed below demon-
strate that the court cannot consider defendants' equitable
defenses. If, on the other hand, the forfeiture provisions in
the lease control whether the tenancy is terminated, then
defendants may raise their equitable defenses—to the extent
that Oregon case law recognizes those defenses.

■■ A party to a lease may raise equitable defenses in response to *contractual* lease forfeiture claims, but not in response to *statutory* lease forfeiture claims. The definitive statement, still followed, came in *Rainey v. Quigley*, 180 Or 554, 557, 178 P2d 148 (1947):

> "Courts of equity have long recognized a distinction between forfeitures agreed upon by the parties and those provided by statute. Equity may relieve from the former, but not from the latter."

That is because "a court of equity may not defeat the legislative will," even though it might be "harsh and severe in its character." *Id.* at 564. Because *Rainey* involved a lease that had no forfeiture provision itself, the only basis for forfeiture was the statute,[3] and the court had no power to provide equitable relief to the lessee. *Id.* at 566-67. The result would have been different if the forfeiture had been based on a provision in the lease:

> "A provision for forfeiture in a lease for failure to pay rent is generally considered in courts of equity as designed to secure payment, and the court will ordinarily relieve against a forfeiture for such cause upon payment of the sum secured, with interest. So that, if this case involved nothing more than the *contract of the parties*, there would be no doubt of the jurisdiction and power of the court to grant the relief which the [lessee] seeks."

*Id.* at 565 (citations omitted).

■ Many leases, however, including this one, *do* contain forfeiture provisions, and the question in such cases is whether the terms of the lease or ORS 91.090 control the forfeiture that the lessor seeks. This court's decisions demonstrate that, when the terms of forfeiture in the lease differ from those in ORS 91.090, the lease terms control and the court treats the issue as one of contract interpretation and enforcement, rather than as one of statutory application. The statute itself provides for a 10-day grace period before termination "unless a different period is stipulated in the lease" and, on that ground, this court has recognized that parties

---

[3] The statute at issue in *Rainey* and other pre-1953 cases that we cite here was OCLA § 8-309, which the legislature first enacted in 1909, Or Laws 1909, ch 185, § 9, and recodified as ORS 91.090 in substantially the same form.

have the power to agree on notice and other terms related to forfeiture that do not appear in the statute. More significantly for the purposes of this case, this court also has held that, when a lessor seeks a forfeiture on the basis of the lease, rather than under ORS 91.090, the lessee may raise equitable defenses to the forfeiture action.

In *Moore*, for example, the lease contained a termination provision with a 30-day notice period. The court rejected the landlord's claim that ORS 91.090 controlled, because that statute "is operative only in those cases where the lease itself does not make provision for the manner in which the tenancy is to be terminated." 233 Or at 43-44. Because the lease in *Moore* did provide for the manner in which the lessor could terminate the tenancy, the lease, rather than ORS 91.090, was the basis for the forfeiture, and therefore the court permitted consideration of the lessee's equitable defenses to the forfeiture action. *Id.* at 47. In *State Hwy. Comm. v. Demarest*, 263 Or 590, 601-02, 503 P2d 682 (1972), this court further explained *Moore*, noting that the forfeiture terms in the lease in that case differed from those in the statute:

> "Obviously, in such a situation the provisions of the lease, not the statute, would control the rights of the parties. The statute expressly states that a 10-day grace period is allowed 'unless a different period is stipulated in the lease.' When the *Moore* lease provided for notice of default and 30 days' grace after such notice, such terms constituted the exception mentioned in the statute."

As noted, the lease here, like the lease in *Moore*, contained a specific provision providing for forfeiture for nonpayment of rent. Moreover, the forfeiture provision required notice, unlike ORS 91.090, and established a different grace period than that contained in ORS 91.090. As in *Moore*, the parties' agreement to those lease terms demonstrates their intent to apply them, rather than the different terms set out in the statute, to their relationship. The fact that plaintiffs' demand letter specifically refers to the forfeiture provision in the lease further supports that conclusion.

Because the forfeiture here is based on the lease agreement, rather than on ORS 91.090, defendants were

entitled to raise their equitable defenses, to the extent that Oregon law recognizes those defenses in contractual lease foreclosure actions. We now return to that issue.

## C. *Excusable Neglect in Late Payment of Rent as an Equitable Defense*

■      As discussed above, plaintiffs argue that a lessee's unilateral mistake in making late rental payments does not constitute the equitable defense of excusable neglect. This court, however, never has held that a lessee's mistake may not constitute excusable neglect, even when the mistake was solely the fault of the lessee. Indeed, this court's cases suggest the opposite. Moreover, the quotations from Story, upon which the Court of Appeals relied in *Grove* and in this case, provide little guidance in an action such as this, as we explain below.

This court's decision in *Moore* illustrates our approach. That case involved a 20-year lease of a gasoline station under which the parties agreed to calculate the rent based on the gallons of gasoline delivered to the premises. Because of fraudulent conduct by a third-party station operator and an employee of the lessee, the lessee consistently underpaid the rent, and the lessor gave notice of termination. After it learned of the underpayment, the lessee made good faith efforts to obtain the necessary records and to resolve the dispute, but the lessor nevertheless filed an action to terminate the lease based on the lessee's default. This court allowed the lessee equitable relief against the lessor's forfeiture action:

> "Equity would listen to defendant's plea with an unsympathetic ear if [defendant's] agents had purposely failed to disclose these records in an effort to obtain a more favorable settlement. But as we interpret the evidence, defendant's failure to produce these records was not a calculated scheme to avoid meeting its obligations to plaintiffs. Defendant's agents may have been negligent in the treatment of plaintiffs' claim, but the fault was not of such a character as to warrant the forfeiture of the lease."

233 Or at 47. On those facts, the *Moore* court held that the lessee's failure to pay the rent in accordance with the terms of

the lease was the result of "excusable neglect" and that the lessee was entitled to equitable relief against forfeiture. *Id.*

Plaintiffs seek to distinguish *Moore* on two grounds. First, they note that *Moore* was a suit in equity to terminate a lease, rather than a statutory FED action. We perceive no reason to allow the equitable defense of excusable neglect in an original proceeding in equity, but to deny it in an FED case. Certainly, nothing in the FED statutes suggests that a party may not raise equitable defenses in a statutory FED action. Moreover, this court consistently has held that a lessee may raise excusable neglect as a defense in such an action. *See, e.g., Wash. Square v. First Lady Beauty Salons*, 290 Or 753, 762, 625 P2d 1311 (1981) ("[P]laintiff concedes that 'exusable neglect' or estoppel might be defenses to an f.e.d. cause; we agree."); *Fry*, 269 Or at 304 (considering, but rejecting on merits, "excusable neglect" defense to FED action); *Demarest*, 263 Or at 602 (same). Second, plaintiffs point out that the lessee in *Moore* was the victim of a fraudulent scheme, albeit not one involving the lessor, and that the lessee acted in good faith. Yet the court in *Moore* described the actions of the lessee's agents as possibly "negligent" and noted that, even before the lessor's notice of termination, the lessee had information from which it could have calculated the rent deficiency. 233 Or at 47.

Plaintiffs are correct that, unlike the present case, *Moore* did not involve a situation in which the lessee's mistake was entirely of its own making. However, as discussed below, the equitable principles upon which *Moore* and the cases cited in *Moore* relied are sufficiently broad to justify defendants in raising the defense of excusable neglect. Plaintiffs are also correct that Story's equity treatise provides assistance in understanding those equitable principles, but the most relevant sections in that treatise are not those upon which plaintiffs or the Court of Appeals relied. The quotations from Story that plaintiffs cite concern unilateral mistake *in the formation of a contract*. That analysis does not apply necessarily to mistake in contract performance or, more to the point, to the question whether a lessee may raise an equitable defense based on mistake in the late payment of rent in a forfeiture action.

■ Consideration of a party's mistake in a forfeiture case based on late payment of rent is different from mistake in contract formation for at least two related reasons, both of which Story identified. First, when a lease specifies that the landlord may retake possession for failure to pay rent on time, "the right of entry is deemed to be a mere security for the payment of the rent." Story, 3 *Equity Jurisprudence* § 1727, at 343. *See also Rainey*, 180 Or at 565 ("A provision for forfeiture in a lease for failure to pay rent is generally considered in courts of equity as designed to secure payment, and the court will ordinarily relieve against a forfeiture for such cause upon payment of the sum secured, with interest."). That is, the bargain struck by parties to a lease is that the lessor will receive the agreed-upon rent for the term of the lease; forfeiture for nonpayment is security to ensure payment and, if the lessee makes payment (with interest and any permissible late payment fee that the lease requires), then the lessor's contract rights are protected.

Second, forfeiture of a leasehold for late payment of rent—depending upon circumstances such as the remaining term of the lease, market conditions, and improvements that the lessee might have made to the property—might result in substantial harm to the lessee compared to the minimal harm to the lessor of receiving the rent several days late. That asymmetry provides a basis for equitable relief. As Story explained:

> "[T]here is no ground to say because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties being the performance of the act), that if he omits to do the act he shall suffer an enormous loss wholly disproportionate to the injury to the other party."

Story, 3 *Equity Jurisprudence* § 1728, at 345. *See also id.*, §§ 1729-36, at 346-57 (discussing situations in which courts allow equitable defenses to prevent forfeiture or penalty); *Caine*, 185 Or at 331-32 (granting equitable relief to lessee who had spent "several hundred dollars" painting and redecorating premises and had tendered rent, with interest, to lessor within three days after expiration of grace period for payment).

The equitable principles that Story articulated and that the courts in *Moore* and *Caine* followed find broad support in other jurisdictions. *See generally* Annot., *Relief Against Forfeiture of Lease for Nonpayment of Rent*, 31 ALR 2d 321 (1953) (collecting cases). Indeed, cases from other states cited in *Moore* for the proposition that excusable neglect is a defense to a lease forfeiture action all involved situations in which the lessee, through good faith error or inadvertence, failed to pay the rent on time. *See Moore*, 233 Or at 47 n 5 (citing *Thomas v. Given*, 75 Ariz 68, 251 P2d 887 (1952); *Wylie v. Kirby* 115 Md 282, 80 A 962 (1911); *Gould v. Hyatt*, 154 NE 173 (Ohio Ct App 1926)). A more recent commentator concurs with that approach:

> "If the tenant's default is the failure to pay rent or some other sum of money, equity ordinarily intervenes to prevent the exercise of a power of termination, provided that the money is paid. In ordering relief from forfeiture upon the payment of the monetary obligation, courts sometimes refer to a theory, developed in English cases, that a power of termination represents security for the payment of a monetary obligation, and that enforcement of the power of termination is not required if payment will make the landlord whole."

David A. Thomas, ed., 5 *Thompson on Real Property* § 40.08(b)(3)(iv), 63-64 (Thomas ed 1994) (footnotes omitted).

For the reasons discussed above, we conclude that defendants' allegations regarding the circumstances under which the envelope containing the rent payment was misaddressed are sufficient to permit defendants to raise the defense of excusable neglect. Of course, whether it will be equitable, in any particular case, to grant relief from forfeiture based on late payment of rent " '* * * must depend to a great extent upon its own circumstances[.]' " *Caine*, 185 Or at 331 (quoting *Welch v. Johnson*, 93 Or 591, 600, 183 P 776 (1919)). We express no opinion whether, in light of all the evidence, including the circumstances of defendants' breach, and the potential harm that defendants would suffer if the lease were terminated or that plaintiffs would suffer if the lease were not terminated, it would be equitable to allow defendants relief from the forfeiture sought by plaintiffs in

this case. That issue is one for the trial court to decide, in the first instance, on remand.

The decision of the Court of Appeals is reversed. The judgment of the district court is reversed, and the case is remanded to the circuit court for further proceedings.[4]

---

[4] The judgment in this case was entered in the Multnomah County District Court in December 1997. Effective January 15, 1998, the jurisdiction and authority of the district courts was transferred to the circuit courts. Or Laws 1995, ch 658, §§ 1, 150. We therefore remand to the circuit court.