Submitted on remand from the Oregon Supreme Court November 7, 2006;
on remand, case held not moot; on reconsideration on court's own motion,
former opinion withdrawn; reversed May 2, 2007

## THOMAS W. BATES,
*Petitioner-Respondent,*

*v.*

## Robert GORDON,
in his official capacity as
Sheriff of Washington County,
*Respondent-Appellant.*

Washington County Circuit Court
C040876CV; A125277

157 P3d 1219

Elmer M. Dickens for appellant.

No appearance for respondent.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Wollheim, Judge.

EDMONDS, P. J.

---

* Brewer, C. J., *vice* Linder, J.

## EDMONDS, P. J.

This case comes to us on remand from the Supreme Court for reconsideration in light of *Kerr v. Bradbury*, 340 Or 241, 131 P3d 737, *adh'd to on recons*, 341 Or 200, 140 P3d 1131 (2006), to determine whether the case is moot. On remand, we determine that the case is not moot. However, on our own motion, *cf.* ORAP 6.25(1), we grant reconsideration of our decision on the merits and reverse the trial court's money judgment against the Washington County Sheriff in favor of petitioner Thomas Bates.

In our original opinion, *Bates v. Gordon*, 201 Or App 619, 120 P3d 512 (2005), we determined that the case was not moot and affirmed the judgment of the trial court overturning the Washington County Sheriff's revocation of petitioner's concealed handgun license pursuant to ORS 166.293(3) and awarding a money judgment for costs to petitioner. On remand, we adhere to the conclusion that the case is not moot because of the existing money judgment. Additionally, the sheriff made an argument to the Supreme Court in his petition for review that has prompted us to grant reconsideration on our own motion regarding whether the trial court correctly awarded judgment to petitioner. Ultimately, that issue turns, in major part, on whether in the earlier opinion we correctly interpreted the effect of an amendment to a statute that by its terms appeared to eliminate a ground for the sheriff to revoke a person's concealed handgun license.

For a more detailed explanation of the underlying facts in the case, we quote from our original opinion:

> "In February 2004, the sheriff, pursuant to ORS 166.293, revoked petitioner's concealed handgun license based on reports that petitioner had left harassing phone messages with the Oregon Department of Employment. According to the sheriff, those messages, coupled with previous incidents involving petitioner, provided the sheriff with 'reasonable suspicion to believe that petitioner was a danger to others or the community at-large based upon his mental or psychological state as demonstrated by a pattern of past behavior.' Petitioner then petitioned the Washington County Circuit Court to review the revocation of his concealed handgun license.

"The court held a hearing to review the revocation of the concealed handgun license, during which the sheriff presented evidence of the harassing phone messages to the Oregon Department of Employment, as well as evidence of two other incidents involving petitioner. One of those incidents concerned phone messages and statements allegedly made by petitioner to Qwest Telecommunications. The sheriff did not offer direct testimony of the messages and statements to Qwest Telecommunications, but instead relied on a police report regarding the incident. Petitioner, appearing *pro se*, objected to the testimony on the basis of relevance. The court then raised *sua sponte* concerns that the contents of the police report were hearsay, and it ruled that such evidence could not support revocation without some additional indicia of reliability.

"Ultimately, the court determined that the sheriff 'did not have reasonable grounds to believe that [p]etitioner has been or is reasonably likely to be a danger to self, others or the community at large based upon his mental or psychological state as demonstrated by past pattern of behavior,' and entered a judgment ordering the sheriff to 'return [p]etitioner's concealed handgun license to [p]etitioner on or before Tuesday, June 1, 2004.' "

*Id.* at 621-22 (footnote omitted).

After the trial court entered judgment, the sheriff appealed, arguing that the court erred in refusing to consider certain evidence in the police reports and that, even assuming that the information in the police reports was inadmissible, the remaining evidence proved that the sheriff had reasonable grounds to believe that petitioner was reasonably likely to be a danger to others or to the community as demonstrated by his past patterns of behavior.

While the original appeal was under advisement in this court, we issued an order to show cause why the sheriff's appeal was not moot. It appeared to us that, subsequent to the events in this case, petitioner's concealed handgun license had been revoked and that no appeal had been taken from that revocation. In response to our show cause order, neither party disputed the fact that petitioner's license had been revoked. However, the sheriff asserted that the appeal was not moot because, among other reasons, he had been

ordered by the trial court to pay petitioner's filing fee pursuant to ORS 166.293(9).[1] Indeed, that order is incorporated into the final judgment entered by the trial court.

On appeal, we concluded in our original opinion that, based on "the reasons advanced by the sheriff," the case was not moot. *Id.* at 621 n 1. On the merits, we observed that, as a result of the 2003 legislative amendments to ORS 166.293, the statute on its face appeared to no longer authorize the revocation of a concealed handgun license on the basis that the sheriff has reasonable grounds to believe that the licensee has been or is reasonably likely to be a danger to self, others, or the community at large, as demonstrated by a past pattern of behavior or participation in incidents involving unlawful violence or threats of unlawful violence. *Id.* at 624. The sheriff filed a petition for review in the Supreme Court. While that petition was pending, the Supreme Court issued its opinion in *Kerr*. The court then allowed review in this case, vacated our decision, and remanded this case to us for reconsideration in light of *Kerr*.

*Kerr* concerned a challenge to the Secretary of State's decision regarding the text of an initiative petition for circulation for placement on the November 2004 ballot. During the litigation process regarding the text of the petition, this court awarded attorney fees to the plaintiffs. *Kerr v. Bradbury*, 194 Or App 133, 93 P3d 841 (2004). Meanwhile, the sponsors of the initiative petition failed to submit the requisite number of signatures from registered voters to place the initiative on the ballot. On review to the Supreme Court, the plaintiffs asserted that the case was not moot because of our award of attorney fees, relying on *2606 Building v. MICA Or I Inc.*, 334 Or 175, 47 P3d 12 (2002). In that case, the court held that, although the lease at issue had expired, the attorney fee award prevented the case from becoming moot because the propriety of the attorney fees awarded depended on the correctness of the underlying trial court judgment regarding the meaning of the lease.

---

[1] ORS 166.293(9) provides:

"Filing fees for actions shall be as for any civil action filed in the court. If the petitioner prevails, the amount of the filing fee shall be paid by the respondent to the petitioner and may be incorporated into the court order."

In *Kerr*, the Supreme Court rejected that analogy. It explained,

> "Plaintiffs are correct that, in cases such as *2606 Building*, this court has concluded that, although an underlying dispute between the parties has dissolved due to the passage of time, a trial court's award of attorney fees set forth in a final judgment nevertheless preserves justiciability of the underlying controversy. Generally, however, such cases are ones in which the trial court automatically awarded attorney fees to the prevailing party in accordance with a statute or the terms of a contract, and the appellant subsequently asserted its liability for those fees as a basis for the court to reach the merits. This case, however, is distinguishable from that scenario.

> "Here, the only award of attorney fees occurred at the Court of Appeals. The Court of Appeals made that award of attorney fees by separate order, and the Secretary of State has not sought review of that order in this court. Neither has the Secretary of State asserted the state's liability for attorney fees as a basis for this court to reach the merits of a complicated constitutional question that has dissolved for purposes of this case. Because the Court of Appeals['] award of attorney fees is not before this court, plaintiff is in no position to assert that the award of attorney fees is a basis for this court to reach the merits of the case."

340 Or at 245.

■ Unlike in *Kerr*, the trial court in this case ordered the sheriff to pay petitioner's filing fee pursuant to ORS 166.293(9), a statute that mandates that "[i]f the petitioner prevails, the amount of the filing fee shall be paid by the respondent to the petitioner[.]" The order requiring the sheriff to pay the fee was incorporated into the final judgment, and the sheriff remains liable as a judgment debtor under the judgment. Moreover, unlike in *Kerr*, the sheriff specifically relies on the judgment against him as the continuing basis for adjudicating the merits, and petitioner is entitled to an award of the filing fee only if he prevails on the merits. Because the filing fee award is still in controversy and because the award depends on the correctness of the trial court's decision on the merits, thus having a practical effect on the rights of the parties, we conclude that the case is not

moot. *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993).

■      We now turn to the issue of reconsideration of our previous opinion. As noted above, we held in our original opinion that, as a result of the 2003 legislative amendments to ORS 166.293, the statute no longer authorized a sheriff to revoke a concealed handgun license on the basis that the sheriff has reasonable grounds to believe that the licensee has been, or is reasonably likely to be, a danger to self, others, or the community at large, as demonstrated by a past pattern of behavior or participation in incidents involving unlawful violence or threats of unlawful violence. *Id.* at 624. In his petition for review to the Supreme Court, the sheriff argued that we erroneously construed the legislature's intent when it amended ORS 166.293 in 2003. The sheriff relies in part on ORS 174.535, which he claims codified the legislative intent that "nothing in the 2003 act was intended to alter legislative intent or purpose of affected statutory sections." Because we did not expressly refer to ORS 174.535 in our earlier opinion and because it specifically mentions Oregon Laws 2003, chapter 14, which amended ORS 166.293, we grant reconsideration on our own motion.[2]

Before 2003, ORS 166.293(3)(a) provided that "[a]ny act or condition that would prevent the issuance of a license under ORS 166.291 *to 166.293* is cause for revoking a concealed handgun license." (Emphasis added.) In 2003, the legislature amended ORS 166.293(3)(a) to provide:

"Any act or condition that would prevent the issuance of a license under ORS 166.291 *and 166.292* is cause for revoking a concealed handgun license."

Or Laws 2003, ch 14, § 65 (emphasis added). The effect of the amendment was to remove the reference to ORS 166.293 from the statute. In our prior opinion, we reasoned that, although it was possible that the legislature did not recognize the effect of removing the reference to ORS 166.293,

"we are not permitted to look beyond the plain and unambiguous language of the amendment. *See* ORS 174.010 ('In the construction of a statute, the office of the judge is simply

---

[2] The sheriff did not seek reconsideration of our decision under ORAP 6.25.

to ascertain and declare what is, in terms or in substance, contained therein, *not to insert what has been omitted*, or to omit what has been inserted * * *.')"

201 Or App at 624 (emphasis in original). Consequently, we gave effect to the removal of the reference to ORS 166.293 and held that the sheriff could not revoke a concealed handgun license on a ground specified in ORS 166.293 for nonissuance of such a license.

ORS 174.535 provides, in part:

"It is the policy of the Legislative Assembly to revise sections from Oregon Revised Statutes and Oregon law periodically in order to maintain accuracy. However, nothing in * * * chapter 14, Oregon Laws 2003 * * * is intended to alter the legislative intent or purpose of statutory sections affected by * * * chapter 14, Oregon Laws 2003, * * * except insofar as the amendments thereto, or repeals thereof, specifically require."

Because ORS 174.535 is proper context regarding the correct interpretation of ORS 166.293(3)(a), as amended, we now reconsider whether the amendment is plain and unambiguous on its face, thereby requiring that it be interpreted, in accordance with the exception specified in ORS 174.535, as we interpreted it to mean in our original opinion, or whether it is reasonably susceptible to more than one meaning, thus requiring us to look beyond the text and the context of the statute.

Other provisions of ORS 166.293 provide additional context for ORS 166.293(3)(a). Read together, in pertinent part, they provide:

"(1) If the application for the concealed handgun license is denied, the sheriff shall set forth in writing the reasons for the denial. The denial shall be sent to the applicant by certified mail, restricted delivery, within 45 days after the application was made. If no decision is issued within 45 days, the person may seek review under the procedures in subsection (5) of this section.

"(2) Notwithstanding ORS 166.291(1), and subject to review as provided in subsection (5) of this section, a sheriff may deny a concealed handgun license if the sheriff has reasonable grounds to believe that the applicant has been

or is reasonably likely to be a danger to self or others, or to the community at large, as a result of the applicant's mental or psychological state, as demonstrated by past pattern of behavior or participation in incidents involving unlawful violence or threats of unlawful violence.

"(3)(a)   Any act or condition that would prevent the issuance of a license under ORS 166.291 and 166.292 is cause for revoking a concealed handgun license.

"(b)   A sheriff may revoke a license by serving upon the licensee a notice of revocation. The notice must contain the grounds for the revocation and must be served either personally or by certified mail, restricted delivery. The notice and return of service shall be included in the file of the licensee. The revocation is effective upon the licensee's receipt of the notice.

"(4)   Any peace officer or corrections officer may seize a concealed handgun license and return it to the issuing sheriff when the license is held by a person who has been arrested or cited for a crime that can or would otherwise disqualify the person from being issued a concealed handgun license. The issuing sheriff shall hold the license for 30 days. If the person is not charged with a crime within the 30 days, the sheriff shall return the license unless the sheriff revokes the license as provided in subsection (3) of this section.

"(5)   A person denied a concealed handgun license or whose license is revoked or not renewed under ORS 166.291 to 166.295 may petition the circuit court in the petitioner's county of residence to review the denial, nonrenewal or revocation. The petition must be filed within 30 days after the receipt of the notice of denial or revocation.

"(6)   The judgment affirming or overturning the sheriff's decision shall be based solely on whether the petitioner meets the criteria that are used for issuance of the license under ORS 166.291 and 166.292. Whenever the petitioner has been previously sentenced for a crime under ORS 161.610 or for a crime of violence for which the person could have received a sentence of more than 10 years, the court shall only grant relief if the court finds that relief should be granted in the interest of justice."

With the above context in mind, we turn back to the language of ORS 166.293(3)(a). On reconsideration, we

believe that the words "under ORS 166.291 and 166.292" in ORS 166.293(3)(a) can be reasonably understood to operate in two different ways. The first alternative is that the words operate to limit the grounds for revocation to those acts and conditions specified "under ORS 166.291 and 166.292." Under that reading, the words "under ORS 166.291 and 166.292" modify the entire phrase "act or condition that would prevent the issuance of a license." That is, the only basis for revoking a handgun license is an act or condition specified "under ORS 166.291 and 166.292," and the result is that which we arrived at in our original opinion.

The alternative way to understand how the words "under ORS 166.291 and 166.292" operate within the text of ORS 166.293(3)(a) is to read them as modifying only the words "issuance of a license." Under that reading, the words simply describe the statutes under which a license *is issued* (ORS 166.291 and ORS 166.292) and are not intended to list the statutes that identify the acts and conditions that prevent the issuance of a license.

That alternative reading of the statute would be consistent with what otherwise appears to be an anomaly in ORS 166.293. ORS 166.292, which is incorporated by reference in ORS 166.293(3)(a), does not contain any conditions or acts that "would prevent the issuance of" a concealed handgun license. Rather, ORS 166.292 outlines the procedure for the *issuance* of a license, including the form of the license and the length of time that a license is valid, but makes no provision for any act or condition that would prevent the issuance of a license.[3] Thus, the reference to ORS 166.292 in ORS 166.293(3)(a) may plausibly be read as describing one of the statutes under which a concealed handgun license is "issued" rather than as identifying a statute that contains an "act or

_____

[3] In contrast, ORS 166.291 sets out the procedures and criteria for obtaining a concealed handgun license from a county sheriff. For example, an applicant must be a U.S. citizen or a legal resident alien, be at least 21 years old, live in the county in which the application is made, and demonstrate competence with a handgun by participation in various gun safety or training courses. Other requirements include that the applicant must never have been convicted of a felony, not have been convicted of a misdemeanor within four years prior to the application, and have no outstanding warrants for arrest. ORS 166.293(2), set out above, also includes a ground for denying a concealed handgun license "[n]otwithstanding ORS 166.291."

condition" that would prevent the issuance of a concealed handgun license.

To recap, the text and the context of ORS 166.293(3)(a) demonstrate that the legislature could have believed that, when it amended ORS 166.293(3)(a), it was merely performing a housekeeping function by eliminating a redundant reference to statutes governing the *"issuance of"* a concealed handgun license, with no intent to alter the statutes that set forth "act[s] or condition[s]" that allow the sheriff to *deny or revoke* a concealed handgun license. If that interpretation of the statute is correct, then the sheriff's argument is correct and we misconstrued the legislature's intent in our original opinion.

Because the text of ORS 166.293(3)(a) is susceptible to more than one reasonable interpretation, we are permitted to examine the legislative history underlying the 2003 amendments.[4] *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993).[5] When describing the bill to the Senate Judiciary Committee, the legislative counsel testified, "The fixes are technical. They do not change the laws' meanings; they make the laws easier to read and understand." Testimony, Senate Committee on Judiciary, SB 81, Feb 3, 2003, Ex B (statement of Legislative Counsel). He also testified that, in the draft of the bill, "[a]fter each section there is an explanatory note * * * explanations for the various changes." Tape Recording, Senate Committee on Judiciary, SB 81, Feb 3, 2003, Tape 13, Side A (statement of Legislative Counsel). The note following the section amending ORS 166.293 stated, "Note: Eliminates needless series references in (3) and (6)." The foregoing demonstrates that the 2003 legislature believed that, when it amended ORS 166.293(3)(a), it was merely performing a housekeeping function by eliminating a redundant reference to the statutes that govern issuance of a license in ORS 166.293(3)(a) that already existed in ORS 166.293(2). It follows, because of the underlying history of the statute, that we erred when we interpreted the 2003

---

[4] In our previous opinion, we determined that we were confined to the text and context of the statute because we did not perceive an ambiguity. 201 Or App at 624.

[5] ORS 174.020(3), as the sheriff points out, also authorizes a court to give "weight to the legislative history that the court considers to be appropriate."

amendment to eliminate ORS 166.293(3)(a) as a ground for the revocation of a concealed handgun license based on the text of the statute.

■     We therefore turn to the sheriff's assignments of error in the original appeal. Because it is dispositive, we address the sheriff's second assignment of error first. The sheriff argues that, even if the evidence from the police reports is not considered, the trial court erred in holding that the sheriff did not have reasonable grounds to believe that petitioner was reasonably likely to be a danger to himself, to others, or to the community at large. Our review of this assignment of error is *de novo*. ORS 166.293(10) ("Initial appeals of petitions shall be heard *de novo*.").

The sheriff presented evidence of five voice mail messages left for the Director of the Oregon Employment Department by petitioner after he was denied unemployment benefits. Petitioner's messages were extremely graphic in nature, with strings of expletives, violent sexual content, and such statements as, "I am going to do what I can to make your fucking life miserable. * * * I'm gonna do what I can to fuck with your lives," "Go fuck yourself with a broken broomstick you fucking bitch whore. * * * [Y]ou are going to regret it do you understand me you are going to regret your fucking per- jurious bullshit. The law is going to come there and it's going to slam your * * * cock sucking head," "I hate you sons of fuck- ing whores and I'll do whatever I can possibly legally to make your fucking life miserable." At the start of each message petitioner spoke calmly, but the volume and tone of his voice would grow with expressions of anger as the telephone calls progressed. Although, for the most part, petitioner threat- ened only legal action, the sheriff's designee testified regard- ing his conclusion that he had reasonable grounds to believe that petitioner was reasonably likely to be a danger to others:

> "In terms of overt threat, I meant he wasn't saying that I am going to physically cause you harm. He couched that by saying, 'I hope you go to hell, or I hope you get run over by a car.' That's what I meant by that.
>
> "I did notice that he did say and he said it several times, 'legally or possibly legally everything I can do,' and to me that—I found it actually interesting that he would mention

that because why would you say that unless you were thinking about things—doing illegal things, and trying to make a point of leading people away thinking that's what you meant. Here you have all this violent—you know, horrific language, and the tac[k] on—and, 'I'm going to do it legally.' I just found that not real consistent. * * * In the end, I determined that I'm more inclined to believe he's a danger to people than not and that's why I made my determination."

In response to the messages, the Employment Department hired two armed security guards for a two-week period to protect their employees.

The sheriff also presented testimony of an incident in which two land surveyors went to petitioner's residence to tell petitioner that they would be surveying the property line of the neighboring property. One of the surveyors testified:

"As I tried to tell [petitioner's father] the procedure * * *, [petitioner] came in behind him and proceeded to yell at us to get off of his property and my partner primarily ran off the property pretty much. And I turned to walk off and he yells in the door, and started following me almost backing me off the property. And I turned to him and said, 'Look, I'm getting off your property, that's close enough.' And then he proceeded to tell me that he was an armed security guard and, 'Don't make me go put on my uniform.' And that was pretty much the altercation. * * * I definitely thought it was a threat."

On *de novo* review, we find that the above evidence constituted reasonable grounds for the sheriff to believe that petitioner has been, or is reasonably likely to be, a danger to self, others, or the community at large, as demonstrated by a pattern of behavior or participation in incidents involving threats of unlawful violence. Indeed, his conduct directed toward the surveyors demonstrates that he was willing to use the fact that he was armed as a way to intimidate and threaten. Petitioner's demeanor on the voice messages was abusive and often out of control. Typically, his tone was one of extreme rage. Although petitioner characterized some of his threats as legal in nature, a reasonable person could properly infer that he was threatening to act outside the boundaries of the law. For instance, the Employment Department was

alarmed enough by his messages to hire armed security guards in order to protect its employees. In light of the above evidence, the trial court erred in holding that the sheriff did not have reasonable grounds to revoke petitioner's concealed handgun license.

On remand, case held not moot; on reconsideration on court's own motion, former opinion withdrawn; reversed.