Argued and submitted January 9, 2015, affirmed February 3, petition for review denied May 5, 2016 (359 Or 525)

In the Matter of
the Concealed Handgun License for

Cassidy J. STANLEY,
*Petitioner-Appellant,*

*v.*

Jason MYERS,
*Respondent-Respondent.*

Marion County Circuit Court
13C16607; A154940

369 P3d 75

George W. Kelly argued the cause and filed the brief for appellant.

Bruce T. Armstrong argued the cause and filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

LAGESEN, J.

## LAGESEN, J.

This is an appeal under ORS 166.293(11) from a circuit court judgment affirming the Marion County Sheriff's revocation of petitioner's license to carry a concealed handgun. On *de novo* review, we conclude that the sheriff has, in the words of ORS 166.293, "reasonable grounds to believe that [petitioner] has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of [petitioner's] mental or psychological state or as demonstrated by [petitioner's] past pattern of behavior involving unlawful violence or threats of unlawful violence." We therefore affirm.

### BACKGROUND

Oregon law generally makes it a crime for a person to "carr[y] any firearm concealed upon the person." ORS 166.250(1)(a). A person who meets certain statutory criteria can obtain a license to carry a concealed handgun from the person's county sheriff. ORS 166.291 - 166.292. However, even if a person otherwise meets the statutory criteria for the issuance of a concealed-carry license, the sheriff may deny the license "if the sheriff has reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of the applicant's mental or psychological state or as demonstrated by the applicant's past pattern of behavior involving unlawful violence or threats of unlawful violence." ORS 166.293(2). The sheriff may also revoke a concealed-carry license for the same reasons that the sheriff is permitted to deny a license: (1) that the licensee no longer meets the criteria for the issuance of the license, or (2) that the sheriff has reasonable grounds to believe that the licensee has been, or is reasonably likely to be, dangerous to self, others, or the community. ORS 166.293(3)(a); *see Bates v. Gordon*, 212 Or App 336, 342-47, 157 P3d 1219 (2007).

If the sheriff denies or revokes a concealed-carry license, the applicant or licensee has a right to judicial review of the sheriff's decision in the circuit court. ORS 166.293(5) states that any person whose license is revoked "may petition the circuit court [within 30 days after receipt of the notice of revocation] in the petitioner's county of residence to

review" the revocation. The statute further provides that, on review,

> "[t]he judgment affirming or overturning the sheriff's decision shall be based on whether the petitioner meets the criteria that are used for issuance of a concealed handgun license and, if the petitioner was denied a concealed handgun license, whether the sheriff has reasonable grounds for denial under subsection (2) of this section. Whenever the petitioner has been previously sentenced for a crime under ORS 161.610 or for a crime of violence for which the person could have received a sentence of more than 10 years, the court shall grant relief only if the court finds that relief should be granted in the interest of justice."

ORS 192.293(6).

Either party to the judgment on review of the sheriff's decision is entitled to appeal to the Court of Appeals, where "[i]nitial appeals of petitions shall be heard de novo." ORS 166.293(10), (11); *Bates*, 212 Or App at 347 (reviewing sheriff's revocation decision *de novo*, pursuant to ORS 166.293(10)).

In this case, petitioner challenges the revocation of his concealed-carry license by the Marion County Sheriff. The sheriff revoked petitioner's license after a background investigation persuaded the sheriff that petitioner has "a history of confrontation with law enforcement, harassing and stalking behavior towards others, and threats of violence towards others." The sheriff conducted the background investigation—which consisted of a review of petitioner's records in law enforcement databases and police reports associated with those records—after the Klamath County Sheriff's Office alerted the Marion County Sheriff's Office in April 2013 that petitioner recently had been in a physical altercation with his mother, and had been arrested as a result. That investigation of records and police reports revealed that, in addition to the 2013 Klamath County incident, petitioner had been involved in a 2010 incident in which he struck his domestic partner, F, with a broomstick and briefly obstructed her airway; that police had received multiple reports from petitioner's neighbors over the course of several months in 2008 about domestic disturbances

involving petitioner; that, in 2008, petitioner's ex-girlfriend, S, had obtained a stalking order against him; that, in 2010 or 2011, officers, while responding to a report of shots fired in the woods, found petitioner intoxicated and unable to locate his Glock firearm; and that, in 2011, there was a disturbance involving petitioner in which petitioner "was highly intoxicated and belligerent and arguing with Marion County deputies who were on scene covering a Salem officer." Petitioner's records also reflected that he had been stopped for speed racing at 120 miles per hour.

Based on that investigation, the sheriff determined that he had "reasonable grounds to believe that [petitioner] has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of [petitioner's] mental or psychological state or as demonstrated by [petitioner's] past pattern of behavior involving unlawful violence or threats of unlawful violence" and, based on that determination, revoked petitioner's concealed-carry license. Petitioner petitioned for review of the sheriff's decision in circuit court.

The circuit court held a two-day hearing on the petition. At the start of the hearing, petitioner objected to the admission of police reports relied upon by the Marion County Sheriff's Office during the revocation investigation. Specifically, petitioner argued that those reports constituted inadmissible hearsay and that the prejudicial effect of admission far outweighed any probative value that they would offer. However, petitioner did concede that the reports could be admitted "to show the state of mind of the officer, the sheriff in this case, of deciding to revoke or not renew the license in this case." The trial court admitted the police reports for that purpose and "reserve[d] ruling on whether they're admissible substantively for the truth of the matter asserted."

At the hearing, the trial court heard from a number of witnesses. Marion County Sheriff's Deputy Wallace and Lieutenant Connor, who were involved in the sheriff's background investigation of petitioner, testified about the information in the police reports that led the sheriff to conclude that petitioner presented a danger to others. Marion County Police Officer Waite, who responded to the 2010 disturbance

where F reported that petitioner had hit her with a broomstick, testified about his observations in responding to that incident, including his observation of the bruise on F's leg and his belief that petitioner had assaulted F.

F testified about the 2010 incident. F explained that petitioner had hit her with a broomstick, which "hurt a lot." She also testified that petitioner had restricted her breathing during the same incident. F also testified about a separate incident in which petitioner had thrown a concrete block at her front door, and another incident in which petitioner had thrown a can of soda into her windshield as she was driving behind the car in which petitioner was riding.

S, who had obtained the stalking order, also testified. She denied that petitioner had "stalked" her and recanted portions of her original statements to the police, that she had made to obtain the stalking order, admitting that she had been "dishonest."

Finally, petitioner testified, providing his own explanations and reasons for why each one of the events at issue had occurred. With the exception of the 2008 stalking incident, which petitioner denied and attributed to lies by S, petitioner generally did not dispute that he had engaged in the conduct reflected in the police reports, although his versions of events differed somewhat from the versions reflected in the reports. In particular, petitioner acknowledged that he had been involved in a physical altercation with his mother while they were in Klamath Falls, and also that he had hit F with a broomstick. In addition, petitioner testified that he thought that his conduct in the incidents involving his mother and F was justified by their physically aggressive conduct.

At the close of the hearing, the trial court affirmed the sheriff's decision to revoke petitioner's license. In affirming that decision, the court relied on each of the events that the witnesses had discussed during trial. With respect to the credibility of the testimony, the trial court specifically found the recantations of the alleged victims to be not credible and "didn't find much of their testimony credible." Thus, the trial court found, by a preponderance of the evidence, that petitioner had exhibited a "pattern of abusive behavior of

[women,]" and that, "based on [that] past pattern of unlawful violence[,] [petitioner] does present a danger to others." The court then entered a judgment affirming the sheriff's revocation of petitioner's license. Petitioner appeals, contending that the trial court erred in affirming the sheriff's revocation of his license.

## STANDARD OF REVIEW

We start by identifying our standard of review. In their primary briefs, both parties treat this appeal as if it were from a judgment entered after an ordinary civil trial. During the hearing, petitioner moved for a directed verdict, which the trial court denied, and petitioner assigns error to the trial court's denial of his motion for a directed verdict, as well as to the trial court's alleged decision to admit the police reports as substantive evidence of petitioner's past conduct. In so doing, petitioner sets forth the usual standards of review applicable to such rulings made in the course of an ordinary civil trial. In his answering brief, the sheriff does not dispute those standards of review. However, in a memorandum of additional authorities, the sheriff calls our attention to our decision in *Bates*, which suggests that the legislature intended a different approach: that we review *de novo* a trial court's judgment in proceedings under ORS 166.293.

We conclude that we must review *de novo*. As we recognized in *Bates*, ORS 166.293(10), by its terms, supplies that standard of review: "Initial appeals of petitions shall be heard de novo." ORS 166.293(10); *Bates*, 212 Or App at 347.[1]

---

[1] At the time the review provisions that are now contained in ORS 166.293 were enacted, Oregon still had district courts. Petitions for review of a sheriff's revocation decision had to be filed in the appropriate county's district court if the county had one, and, if not, in the circuit court. ORS 166.274(2) (1989). If a petition was filed in a district court, the initial appeal of that petition went to the circuit court. ORS 166.274(9)(a) (1989). Any subsequent appeal of the circuit court's judgment went to the Court of Appeals. ORS 166.274(9)(b) (1989). In other words, at that time, it was possible for there to be more than one appeal in a proceeding to review a sheriff's revocation decision: an initial appeal from the district court to the circuit court, and a subsequent appeal from the circuit court to the Court of Appeals. When the legislature abolished the district courts in 1995, the statute was amended to eliminate references to the district courts and to require that all petitions for review of a sheriff's revocation decision be filed in the circuit court. Or Laws 1995, ch 658, § 89. As a result of the abolition of the district courts, all "[i]nitial appeals of petitions," ORS 166.293(10), now necessarily come to the Court of Appeals.

Although we decided *Bates* before the legislature amended ORS 19.415 in 2009 to make *de novo* review discretionary in certain cases, we do not think the 2009 amendments to ORS 19.415 alter our standard of review under ORS 166.293(10). By its terms, ORS 19.415(3), which operates to make *de novo* review discretionary in certain cases, applies only "[u]pon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights[.]" ORS 19.415(3)(b). It is not clear that a proceeding under ORS 166.293 appropriately can be characterized as an "equitable action or proceeding." Rather, it is a special statutory proceeding to review a decision of an elected county official, more in the nature of an administrative review proceeding under the Administrative Procedures Act. In any event, even if a proceeding under ORS 166.293 properly can be characterized as "equitable"—such that the specification in ORS 166.293(10) that review "shall" be *de novo* would conflict with the specification in ORS 19.415 that *de novo* review is discretionary—ORS 166.293 is the more specific statute and we must give effect to it for that reason. ORS 174.020(2) ("When a general and particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent."); *Powers v. Quigley*, 345 Or 432, 438, 198 P3d 919 (2008) ("[I]f two statutes are inconsistent, the more specific statute will control over the more general one."). Therefore, pursuant to ORS 166.293(10), we review a sheriff's decision to revoke a concealed-carry license *de novo*.

## ANALYSIS

Having decided that we must review *de novo*, we turn to the parties' arguments as to whether the sheriff's revocation decision should be affirmed. Although petitioner did not frame his assignments of error in terms of a *de novo* standard of review, and neither party framed his arguments in terms of that standard, we think the parties' arguments fairly present two issues for us to decide: (1) What is the proper scope of review on review of a sheriff's revocation decision and, in particular, what evidence may a reviewing court consider? And (2) did the sheriff have "reasonable grounds to believe that [petitioner] has been or is reasonably likely to be a danger

to self or others, or to the community at large, as a result of [petitioner's] mental or psychological state or as demonstrated by [petitioner's] past pattern of behavior involving unlawful violence or threats of unlawful violence[?]"

As to the first question, the parties differ sharply as to the proper scope of a reviewing court's task on review of a sheriff's revocation decision and, in particular, about what evidence a court may consider in assessing whether a sheriff has reasonable grounds to believe that a concealed-carry licensee was dangerous to self, others, or the community.

Petitioner argues that the issue on review of the sheriff's revocation decision is "whether the petitioner meets the criteria for the issuance of a concealed handgun license," notwithstanding the fact that the sheriff revoked petitioner's license based on his determination that petitioner's history gave him reasonable grounds to believe that petitioner was a danger. Petitioner bases the argument on the text of ORS 166.293(6), which states, in relevant part, "The judgment affirming or overturning the sheriff's decision shall be based on whether the petitioner meets the criteria that are used for issuance of a concealed handgun license and, if the petitioner was denied a concealed handgun license, whether the sheriff has reasonable grounds for denial under subsection (2) * * *." He reasons that, because his license was *revoked* rather than *denied,* a reviewing court is limited to reviewing whether he meets the criteria for issuance of a license, and may not consider whether the sheriff has reasonable grounds to believe that petitioner was dangerous. In addition, although petitioner appears to acknowledge that a sheriff permissibly may rely on police reports and other hearsay information in determining whether to issue or revoke a concealed-carry license, petitioner contends that the sheriff may not rely on such evidence to support a licensing decision once the case is in circuit court.

In contrast, the sheriff argues that, on review, when the sheriff has revoked a license based on a determination that there are reasonable grounds to believe that the licensee is a danger, then a court's review is of that decision. In other words, the sheriff argues that the court should review the sheriff's decision on the basis on which it was

made. If the sheriff revoked based on a determination that a licensee no longer met the criteria for the issuance of a license, then review would be to determine whether that decision was correct. And, if the sheriff revoked based on a determination that there were reasonable grounds to believe that the licensee was a danger in the manner described by ORS 166.293(2), then review would be to determine whether that decision was correct. As to what evidence the reviewing court may consider, the sheriff argues that "[t]he role of the trial court is to consider the information relied upon by the sheriff, and to determine whether reasonable grounds exist for the determination."

The text of ORS 166.293 supplies little in the way of answers to these questions. All that the legislature has told us about what the review process should look like—beyond the specification that initial appeals of petitions must be reviewed *de novo*—is that

> "[t]he judgment affirming or overturning the sheriff's decision shall be based on whether the petitioner meets the criteria that are used for issuance of a concealed handgun license and, if the petitioner was denied a concealed handgun license, whether the sheriff has reasonable grounds for denial under subsection (2) of this section. Whenever the petitioner has been previously sentenced for a crime under ORS 161.610 or for a crime of violence for which the person could have received a sentence of more than 10 years, the court shall grant relief only if the court finds that relief should be granted in the interest of justice."

ORS 166.293(6). Notwithstanding that lack of express guidance, we draw a few clues from the text and context of the statute, as well as principles of due process, and determine how the process should work based on those clues.

First, we agree with the sheriff that when, as here, the sheriff has revoked a concealed-carry license based on a determination that there are "reasonable grounds to believe that [the licensee] has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of [the licensee's] mental or psychological state or as demonstrated by [the licensee's] past pattern of behavior involving unlawful violence or threats of unlawful violence," the issue for the reviewing court is the correctness

of that determination, and not whether the licensee meets the criteria for the issuance of a license. It is undisputed that ORS 166.293(3)(a) authorizes a sheriff to revoke a concealed-carry license based on "[a]ny act or condition that would prevent the issuance of a concealed handgun license," including those circumstances that permit the sheriff to deny a license under ORS 166.293(2). *See Bates*, 212 Or App at 342-49 (explaining that ORS 166.293(3)(a) authorizes a sheriff to revoke if the sheriff has reasonable grounds to believe the licensee is a danger, as described in ORS 166.293(2)).[2] Given that a decision to revoke a license under ORS 166.293(2) pursuant to ORS 166.293(3)(a) is, for all practical purposes, the same as a decision to deny a license under ORS 166.293(2), we see no rational reason why the legislature would have intended for a reviewing court to review a sheriff's reasonable-grounds determination in the context of a denial, but to review an entirely distinct issue when reviewing a revocation. Were that the case, the court's action would not be a "review" of the sheriff's decision at all, but a determination of an entirely distinct issue that the sheriff did not actually decide in the course of revoking the licensee's license. Nothing in the text, context, or legislative history of ORS 166.293 suggests to us that that is the process the legislature intended.

Second, as to the evidence that a reviewing court may consider, we agree with the sheriff that a reviewing court may consider the police reports and other hearsay evidence on which the sheriff relied in evaluating whether the sheriff has "reasonable grounds to believe that [petitioner] has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of [petitioner's] mental or psychological state or as demonstrated by [petitioner's] past pattern of behavior involving unlawful violence or threats of unlawful violence." As the trial court correctly recognized, the admission of such reports does not violate OEC 802's prohibition on hearsay because, when offered to prove the basis of the sheriff's revocation decision,

---

[2] Although the legislature amended ORS 166.293(3)(a) after we decided *Bates*, those amendments do not alter the conclusion that a sheriff may revoke a license based on a determination under ORS 166.293(2) that there are reasonable grounds to believe that a licensee is a danger to self, others, or the community.

the reports are not offered for their truth but, instead, are offered to show that the sheriff "has reasonable grounds to believe," based on those documents, that the licensee "has been or is reasonably likely to be" a danger.

Additionally, although a sheriff who relies on such reports to determine that a licensee or applicant may present a danger necessarily relies on them for "the truth of the matter[s] asserted" within them, *see* OEC 801(3), the evidence code, by its terms, applies only to courts and does not govern a sheriff, OEC 101(1). Beyond that, nothing in the statutes governing concealed-carry licenses indicates that the legislature intended that the sheriff would not be able to rely on police reports and similar hearsay evidence in making a revocation decision. Had the legislature intended to preclude the sheriff from doing so, we think it would have said so expressly. Consequently, we conclude that a reviewing court may consider such reports and records in reviewing a sheriff's revocation decision.

That said, we agree with petitioner that a court reviewing a sheriff's decision under ORS 166.293 is not limited to considering the evidence on which the sheriff relied in determining whether the sheriff has reasonable grounds to believe that a concealed-carry licensee has been or is reasonably likely to be a danger. We draw that conclusion for two reasons. First, we infer from the fact that the legislature placed the initial review of the sheriff's decision in the hands of the circuit court—a record-making body—that the legislature intended to permit the parties to the proceeding to create a record in that court. *Cf. Norden v. Water Resources Dept.*, 329 Or 641, 647, 996 P2d 958 (2000) (noting that the legislature's directive that review of certain agency orders take place in circuit court—a "record-making" court—weighed in favor of conclusion that review of order would be based on the record created in circuit court). Second, we are mindful that due process requires that a licensee be afforded a meaningful opportunity to contest a license revocation. *Bell v. Burson*, 402 US 535, 539-42, 91 S Ct 1586, 29 L Ed 2d 90 (1971); *Goldberg v. Kelly*, 397 US 254, 269-70, 90 S Ct 1011, 25 L Ed 2d 287 (1970). To be meaningful, we believe that an opportunity to be heard must afford the licensee the opportunity to present evidence.

*See Goldberg* at 269-70 (discussing how due process right to be heard encompasses a right to introduce evidence). If ORS 166.293 were construed to preclude a circuit court reviewing a sheriff's revocation decision from considering evidence introduced by the licensee, it would raise serious questions about the constitutional adequacy of the license-revocation process. We decline to construe ORS 166.293 in that manner.

Thus, in the end, when reviewing a sheriff's revocation of a concealed-carry license on the ground that the sheriff has reasonable grounds to believe that the licensee is a danger in the manner described by ORS 166.293(2), a reviewing court's task is exactly the one performed by the trial court in this matter: to determine, on the record developed in circuit court, whether the sheriff has "reasonable grounds to believe that [the licensee] has been or is reasonably likely to be a danger to self or others, or to the community at large, as a result of [the licensee's] mental or psychological state or as demonstrated by [the licensee's] past pattern of behavior involving unlawful violence or threats of unlawful violence."[3]

Turning to the merits, we conclude, on *de novo* review, that the sheriff has reasonable grounds to believe that petitioner has been "a danger to *** others *** as demonstrated by [petitioner's] past pattern of behavior involving unlawful violence," and, thus, properly revoked petitioner's concealed-carry license. Among other things, even setting aside the incidents documented in the police reports, the testimony at trial demonstrates that petitioner was involved in a physical altercation with his mother in Klamath Falls in one incident, hit F with a broomstick and shut off F's airway in another incident, threw a concrete brick at F's door in another incident, and threw a can of soda at F's windshield while she was driving in another incident. Those incidents reflect a pattern of behavior involving unlawful violence sufficient to afford the sheriff reasonable grounds to believe that petitioner has been a danger to others.

Affirmed.

---

[3] We note that this task, as we have defined it, greatly resembles a trial court's task on review of an agency order in other than a contested case pursuant ORS 183.484, as the Supreme Court defined that task in *Norden. See* 329 Or at 649.