Argued and submitted June 30, 2009, judgment affirmed; supplemental
judgment vacated and remanded for entry of attorney fee award of $2,500
March 3, petition for review allowed August 18, 2010 (348 Or 669)

MENASHA FOREST PRODUCTS CORPORATION,
*Plaintiff-Appellant,*

*v.*

CURRY COUNTY TITLE, INC.,
and Transnation Title Insurance Company,
*Defendants-Respondents.*

Curry County Circuit Court
06CV0844; A137464

227 P3d 770

Gary Roberts argued the cause for appellant. With him on the briefs was Schwabe, Williamson & Wyatt, P.C.

Jonathan M. Radmacher argued the cause for respondents. With him on the brief was McEwen Gisvold, LLP.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

Plaintiff brought this action seeking a declaration that it would not be liable to defendant Transnation Title Insurance Company (Transnation) if Transnation sued plaintiff, as it threatened to do. Defendant moved for judgment on the pleadings, contending that the case was not ripe for adjudication. The trial court agreed, dismissed plaintiff's claim, and entered judgment in favor of defendants. Plaintiff appeals from that judgment and also from a supplemental judgment awarding defendants $31,449.85 in attorney fees. We affirm the judgment. On the supplemental judgment, we hold that the proper award of attorney fees is $2,500.

Plaintiff sold real property to a company called Golden Gate Trust. Golden Gate subsequently discovered that plaintiff had already sold part of that property to a different buyer. Golden Gate's title insurer, Transnation, informed plaintiff that, if Transnation had to pay a claim to Golden Gate based on plaintiff's failure to convey good title, Transnation would demand reimbursement from plaintiff. Plaintiff believed that it would not be obligated to reimburse Transnation; rather, plaintiff believed that the fault (and liability) would lie with the escrow company that had performed the faulty title search. Plaintiff brought this action against Transnation and the escrow company, Curry County Title, Inc. (CCT), seeking a declaration that plaintiff would have no obligation to reimburse Transnation if Transnation followed through on its demand. The court granted defendants' motion for judgment on the pleadings, concluding that the case was not justiciable. In a supplemental judgment, the court awarded defendants $31,449.85 in attorney fees. Plaintiff appeals. We agree with the trial court that the case was not justiciable, and consequently we affirm the judgment. On the supplemental judgment awarding attorney fees, we vacate and remand.

■■ In reviewing a judgment on the pleadings, we presume that the parties' well-pleaded allegations are true, and we affirm only if we can determine that, as a matter of law, those allegations do not state a valid claim on which the adverse party can prevail. ORCP 21 B; *Curtis v. MRI Imaging Services II*, 327 Or 9, 11, 16, 956 P2d 960 (1998);

*Slogowski v. Lyness*, 324 Or 436, 439, 927 P2d 587 (1996); *Smith v. Washington County*, 180 Or App 505, 507, 43 P3d 1171, *rev den*, 334 Or 491 (2002). We do not look outside the pleadings. *Kelly v. Olinger Travel Homes, Inc.*, 200 Or App 635, 641, 117 P3d 282 (2005), *rev den*, 340 Or 308 (2006). The pleadings in this case contain the following allegations.

Before selling timberland to Golden Gate, plaintiff entered into a contract with CCT, under which CCT would provide escrow services, an accurate title report, and title insurance to Golden Gate. CCT secured that title insurance from defendant Transnation; thus, Transnation stood as guarantors of good title in the transaction between plaintiff and Golden Gate. Although CCT and Transnation both allegedly knew that plaintiff had already sold a 40-acre parcel of the timberland to another buyer, Knox, CCT nonetheless prepared a title report and deed that erroneously included the Knox property. After discovering that error, Transnation, the guarantor of good title, wrote to plaintiff, asserting that plaintiff had breached the warranty of title that plaintiff had provided Golden Gate because the title erroneously included the Knox property, and claiming that plaintiff was obligated to indemnify Transnation "for all amounts Transnation pays Golden Gate" under the title insurance that Transnation had provided to Golden Gate. The damages were "in an unknown amount but [were] measured by the amount [plaintiff] may be required to pay to Transnation under its subrogation or other theory." Defendants Transnation and CCT, for their part, alleged that plaintiff "has initiated a separate action against Golden Gate Trust, in which the factual and legal issues related to [the controversy between plaintiff and Transnation] are at issue * * *." That "separate action," plaintiff stated in its reply, was an arbitration with Golden Gate.

The present litigation involves plaintiff's declaratory judgment action against defendants, requesting a declaration that plaintiff "is not liable to Transnation for any amount [Transnation] may pay to Golden Gate and that CCT must defend, indemnify, and hold [plaintiff] harmless from all losses and expenses claimed by Transnation and Golden Gate"—that, in other words, if Transnation were determined to be entitled to indemnification for the amount that it might

have to pay Golden Gate due to the faulty title, it would be CCT and not plaintiff that must bear the cost. Plaintiff also requested attorney fees. Defendants moved for judgment on the pleadings. The trial court granted defendants' motion on the ground that the declaratory judgment claim was not justiciable.[1] In a supplemental judgment, the court awarded defendant Transnation $31,449.85 in attorney fees. Plaintiff appeals those judgments.

■ In plaintiff's first assignment of error, it argues that, contrary to the trial court's conclusion, the declaratory judgment action was justiciable. Defendants respond that the trial court was correct but that, more importantly, the case has become moot; plaintiff prevailed in the arbitration with Golden Gate, and the deed was reformed. Consequently (as Transnation admitted in oral argument before this court), Transnation cannot and will not seek any indemnification against plaintiff. Thus, according to defendants, we need not decide whether the case was justiciable at the time it was filed, because, in any event, it is not justiciable now.

■■ We disagree. It is true that a case is not justiciable if it becomes moot during judicial proceedings. *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004). A case remains justiciable, however, if "the court's decision in the matter will have some practical effect on the rights of the parties to the controversy." *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993). Here, our decision has a practical effect on defendants' entitlement to attorney fees because those fees depend on (among other things) defendants' status as the prevailing parties. *2606 Building v. MICA OR I Inc.*, 334 Or 175, 179 n 2, 47 P3d 12 (2002). If the trial court erred in ruling that the case was not justiciable, then it follows that it also erred in awarding attorney fees. We must therefore decide whether the case was justiciable at the time of the trial court's judgment.

Plaintiff relies on ORS 28.020 and ORS 28.030, provisions dealing with declaratory judgments. ORS 28.020 provides,

---

[1] Plaintiff's complaint also contained claims for breach of contract and negligence. The trial court ruled that those claims were not justiciable, and plaintiff does not contest that ruling on appeal.

> "Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

ORS 28.030 provides, "A contract may be construed either before or after there has been a breach thereof." Plaintiff contends that its declaratory judgment claim seeks merely a declaration of its rights or status under its contract with CCT and that the statutes authorize the court to provide one even though no breach of contract has yet occurred.

■■  That may be true, but it does not address the more fundamental issue: whether the controversy between the parties, even if it is authorized by statute, was nonetheless not ripe for adjudication. A controversy is ripe if it involves present facts, as opposed to future events of a hypothetical nature. *McIntire v. Forbes*, 322 Or 426, 434, 909 P2d 846 (1996). Ripeness is one aspect of justiciability, and, for that reason, a constitutional prerequisite for adjudication, the declaratory judgment statutes to the contrary notwithstanding. *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982); *Yancy*, 337 Or at 349.[2]

■  As noted, ripeness depends on whether the controversy involves present facts as opposed to hypothetical future events. *McIntire*, 322 Or at 434. "Present facts" and "hypothetical future events," however, do not announce themselves as such. For example, it may be a fact that, at the time this case was tried, plaintiff was at risk of having to indemnify Transnation. The risk was real and present. At the same time, however, the present fact of risk always implicates the hypothetical occurrence of a future event or events, in this

---

[2] In *Kellas v. Dept. of Corrections*, 341 Or 471, 145 P3d 139 (2006), the Supreme Court indicated that one aspect of justiciability—standing—was not a constitutional prerequisite to adjudication in all cases. *Kellas* did not overrule any of the earlier cases expressly declaring that ripeness was constitutionally required, and, until those cases are overruled or the Supreme Court extends the holding of *Kellas* to encompass ripeness, we presume that the earlier cases remain authoritative.

case (1) an outcome of plaintiff's arbitration with Golden Gate that left Golden Gate with a creditable claim against Transnation, (2) a claim by Golden Gate against Transnation, (3) a subsequent payment on the claim by Transnation, and (4) Transnation's follow-through on its threat to seek indemnification from plaintiff. Ripeness is often a matter of degree. Still, from several cases, we can infer that this case was not ripe, regardless of where the fine line between "present" and "hypothetical" might lie.

In support of its argument that the case was ripe for adjudication, plaintiff relies on insurance cases in which the underlying controversy involved a dispute over coverage. Of particular importance to plaintiff's argument is *State Farm Fire & Cas. v. Reuter*, 294 Or 446, 657 P2d 1231 (1983). In that case, Reuter had been convicted of raping B, and, after the criminal trial, B brought a civil action against him. He tendered his defense to State Farm, on the ground that he was covered under his parents' homeowners' liability policy. State Farm then brought an action naming B and Reuter as defendants, seeking a declaration that it had no obligation to defend or indemnify Reuter because the policy under which he claimed coverage had an exclusion for intentionally caused damages. *Id.* at 448. This court held that State Farm's case was not justiciable. The Supreme Court reversed, explaining, "A declaratory judgment action has been held to be a proper proceeding to determine whether the insurer is obligated to defend and indemnify the insured as regards a pending action against him[.]" *Id.* at 449. Plaintiff argues that the present case is indistinguishable. It equates itself with an insurer and maintains that its "argument is the same that insurance companies routinely make when seeking a declaration that their insurance contract does not cover the dispute." As examples of what insurance companies routinely do, plaintiff cites cases since *Reuter* in which an insurer sought and obtained a declaration regarding a policy's coverage.[3]

Plaintiff's argument is undercut, however, by *Reuter* itself. In distinguishing an earlier case, *Hale v. Fireman's*

---

[3] *North Pacific Ins. Co. v. Switzler*, 143 Or App 223, 230, 924 P2d 839 (1996); *Aetna Casualty v. Smith*, 81 Or App 384, 385, 725 P2d 611 (1986).

*Fund Ins. Co. et al*, 209 Or 99, 302 P2d 1010 (1956), which we discuss below, the court in *Reuter* pointed out that in the case at hand, "[a] present controversy exists between the plaintiff and its insured as to the plaintiff's duty to defend its insured in the pending personal injury case." *Reuter*, 294 Or at 453. In other words, at the time the case was filed, B had already brought her action against Reuter and Reuter had tendered defense to State Farm. The question whether State Farm did or did not have a duty to defend was real and present; it had already arisen; it was not contingent on any future event. The other insurance cases that plaintiff cites, *see* 234 Or App at 121 n 3, were in a similar posture.

The case that *Reuter* distinguishes, *Hale*, provides a revealing contrast. In that case, the plaintiff was allegedly injured by Smith. Smith was insured by the defendant, Fireman's Fund. The plaintiff filed an action against Smith, and, in a separate action, he filed an action against Fireman's Fund seeking a declaration that the company's contract with Smith required it to indemnify him if Smith were found liable in the first action and was also insolvent. *Hale*, 209 Or at 102-03. The court held that the case was not justiciable. "[The plaintiff's] rights * * * are contingent. He may never win a judgment in the tort action. The *defendant insurance companies are not required to do anything* concerning the plaintiff until a judgment is entered in his favor against the [tortfeasor] * * *." *Id.* at 113 (emphasis added).

Of similar import and more recent vintage are *1000 Friends of Ore. v. Deva*, 64 Or App 755, 669 P2d 1183 (1983), and *Berg v. Hirschy*, 206 Or App 472, 136 P3d 1182 (2006). In *1000 Friends of Ore.*, the plaintiffs sought a declaration that, because the incorporation of a city was unlawful, the city's selection of officers and enactment of ordinances were unlawful as well. *Id.* at 757. At the time that the case was filed, the question whether the city was lawfully incorporated remained undecided; it was pending before the Land Use Board of Appeals. *Id.* This court held that the case was not justiciable, explaining,

"The underlying hypothesis of plaintiffs' complaint is that the incorporation of Rajneeshpuram was not proper; they are seeking a declaration that if that hypothesis is

established, certain results will follow. Those matters may not be determined until after the underlying hypothesis has been finally determined. Until then, no justiciable controversy exists and no declaratory relief may be granted."

*Id.* at 758. Likewise, in *Berg*, the plaintiffs had relied on tax advice from the defendant and then discovered that the advice might expose them to added taxes or penalties if "taxing authorities" performed an audit. The plaintiffs sought a declaratory judgment to the effect that the defendant had been negligent and would be liable for any penalties that the plaintiffs might incur. 206 Or App at 474. Citing *Hale,* this court held that the plaintiffs' declaratory judgment action was too contingent and speculative to be justiciable. The claim depended "on the occurrence of future events that may or may not happen. * * * Indeed, the relevant tax authority may never decide to review [the] plaintiffs' tax returns at all, or may never decide that [the plaintiffs] experienced a taxable gain that subjects [the] plaintiffs to additional liability." *Berg,* 206 Or App at 475-76.

This review of the relevant case law compels the conclusion that, in the present case and based solely on the parties' pleadings, plaintiff's declaratory judgment action was not justiciable. The key factor in reaching that conclusion is that, unlike the plaintiffs in *Reuter* and the other insurance cases on which plaintiff relies, plaintiff here, at the time that this case was tried, was not already faced with the need for a determination of its rights and obligations with respect to CCT and Transnation. Rather, whether that need would ever arise depended on the outcome of the pending arbitration, as well as several other contingencies.[4] Put another way, plaintiff relies on cases in which the party seeking the declaration either will or will not face an obligation—the duty to defend—depending only on the meaning of the document it asks the court to interpret. Here, whether plaintiff will or will not face any obligation depends not only on the interpretation of the document, but on whether an interpretation of the document will even become necessary—which, due to the

---

[4] Indeed, the pleadings do not even reveal whether Golden Gate had filed a claim with Transnation.

outcome of the arbitration, it did not. The trial court did not err in ruling that the case was not justiciable.

■ ■ We turn, then, to plaintiff's second assignment of error, which concerns the trial court's award of attorney fees to defendants. A prevailing party is not entitled to attorney fees unless the award is authorized by a statute or a contract. *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1990). Defendants sought fees and identified the relevant contract as the "Escrow Instructions" agreement between plaintiff and CCT, which provides, in part:

> "If you are the prevailing party in any action or proceeding between you and some or all of the parties to the escrow, you shall be entitled to all costs, expenses, and reasonable attorney fees expended or incurred in connection therewith."

Plaintiff objected, arguing that Transnation was not entitled to any attorney fees because it was not a party to the contract; the "you" to whom the attorney provision is addressed is CCT. Further, plaintiff argued, CCT is not entitled to any attorney fees because, as defendants concede, all of defendants' fees were paid by Transnation, to Transnation's attorney; thus, CCT did not "expend" or "incur" anything. The trial court rejected plaintiff's objections and awarded defendants $31,449.85 in attorney fees. The court explained its decision in a separate memorandum to the parties, stating:

> "Plaintiff claims that the contract on which defendants base their claim for attorney fees is only between it and [CCT] and not between it and Transnation and that Transnation is the entity paying the fees and not [CCT]. Plaintiff alleged in its declaratory relief claim that [CCT] at all times was acting as the agent for Transnation. Its complaint is filed against both defendants, which are required to defend the matter and which, according to plaintiff, are subject to its request for declaratory relief. [CCT] is entitled to attorney fees under the contract between it and plaintiff in defending this matter and the fact that Transnation may be paying for the attorney fees does not affect [CCT's] right to attorney fees as the prevailing party. *Domingo v. Anderson*, 325 Or 385[, 938 P2d 206] (1997). The two objections raised by plaintiff are overruled."

On appeal, plaintiff renews the arguments that it made to the trial court and contends that the court erred in relying on *Domingo*, which it claims is distinguishable. In response, defendants argue that the court's award was appropriate because CCT was an agent for Transnation, and the agency agreement between the two defendants obligated CCT to indemnify Transnation "against * * * attorney's fees and costs of litigation." Therefore, according to defendants, CCT *did* "incur" attorney fees and costs. Plaintiff replies that, under the circumstances in this case, defendants' agency agreement required indemnification from CCT in the amount of $2,500 only and that, in any event, there is no evidence that Transnation sought indemnification.

First, we agree with plaintiff that *Domingo* is distinguishable. In that case, the defendant, the beneficiary of a trust deed, sought attorney fees under the contractual terms of the deed, which provided that the trust deed grantor (*i.e.*, the plaintiffs)

> "agrees * * * to appear in and defend any action or proceeding purporting to affect the security rights or powers of beneficiary * * * and in any suit, action or proceeding in which the beneficiary * * * may appear * * * to pay all costs and expenses, including * * * the beneficiary's or trustee's attorney fees[.]"

*Id.* at 387 (internal quotation marks omitted; brackets and ellipses in original). The defendant's lawyer, however, had been retained by his insurer, the Professional Liability Fund, not by the defendant personally. The plaintiffs objected, contending that the defendant had no obligation to pay for the legal services that he had received. The Supreme Court upheld the trial court's award of attorney fees to the defendant, stating:

> "The contractual provisions * * * do not contain any condition or qualification rendering them inapplicable if a third person, rather than one of the parties to the litigation, pays the lawyer's fees. The contract language authorizes and directs an award of attorney fees, leaving the decision of the amount that is 'reasonable' to the court. The specific argument made by plaintiffs does not claim that the words of the contract provide a basis for refusing to award attorney fees."

*Id.* at 389 (internal footnote omitted). Here, in contrast, plaintiff *does* claim that the words of the contract provide a basis for refusing to award attorney fees—specifically, the requirement that the "costs, expenses, and reasonable attorney fees" claimed be "expended or incurred." *Domingo*, in other words, is inapplicable here, because it does not stand for the proposition that a party, otherwise entitled to attorney fees, maintains the entitlement even if the fees are paid by a third party. Rather, we understand *Domingo* to stand for the proposition that whether such an entitlement exists depends on the terms of the statute or contract creating the entitlement.

The specific contractual term governing attorney fees in the present case entitles CCT, as the prevailing party in an "action or proceeding between [it] and some or all of the parties to the escrow," to "all costs, expenses, and reasonable attorney fees," but only if those costs, expenses, and attorney fees are "expended or incurred in connection" with the action or proceeding.

This court has held that attorney fees are "incurred" if a party seeking those fees "has become *liable* to pay them." *Anderson v. Wheeler*, 214 Or App 318, 322, 164 P3d 1194 (2007) (emphasis added). The record in this case clearly demonstrates that Transnation, not CCT, was billed for and paid all attorney fees. Thus, whether the trial court's award was proper turns on whether CCT was "liable" to pay the attorney fees billed to and paid by Transnation. That inquiry, in turn, depends on the agency agreement between CCT and Transnation. The agreement provides:

"13. Liability of AGENT; Insurance

"a)    Agent [*i.e.*, CCT] shall be liable to COMPANY [*i.e.*, Transnation] for, and hereby agrees to indemnify [Transnation] against all loss, cost or expense, including attorney's fees and costs of litigation, incurred by [Transnation] and arising from

"1.    the fraud, misconduct or gross negligence of [CCT] or any agent, servant or employee of [CCT]; or

"2.    the failure of [CCT] to comply with the terms of this Agreement or with the rules, regulations or instructions given to [CCT] by [Transnation]; or

"3.    any loss or misapplication of funds, documents or other things of value by [CCT] or any agent, servant, or employee of [CCT]; or

"4.    any other actual or alleged act or omission by [CCT] or any agent, servant or employee of [CCT], whether or not occurring in connection with the issuance of a Policy, and any Policy issued by [CCT], but the liability of [CCT] under this Section 13(a) 4 shall not exceed the first $2,500.00 of such loss, cost or expense."

Thus, CCT was required to indemnify Transnation against "all loss, cost or expense, including attorney's fees and costs of litigation," only if CCT (1) committed "fraud, misconduct or gross negligence"; (2) failed "to comply with the terms of [the] Agreement or with the rules, regulations or instructions given to" it by Transnation; or (3) lost or misapplied "funds, documents or other things of value." If CCT did any of those things, it was obligated to indemnify Transnation against the total amount of attorney fees that Transnation paid in connection with this case and was therefore "liable" for those fees, meaning that it had "incurred" them. If CCT did not do any of those things, its liability is determined under Section 13(a)(4) and was therefore limited to $2,500.

■    The record in this case does not support an award in excess of $31,449.85. The party seeking attorney fees has the burden of proving entitlement. *Haynes v. Adair Homes, Inc.*, 227 Or App 536, 541, 206 P3d 1062, *rev den*, 347 Or 42 (2009). Here, that party is Transnation, and it has neither adduced nor pleaded facts that would entitle it to the larger award. We therefore must vacate the supplemental judgment and remand for entry of an attorney fee award of $2,500.

Judgment affirmed; supplemental judgment vacated and remanded for entry of attorney fee award of 2,500.