Argued and submitted November 10, 2010, decision of Court of Appeals on attorney fees reversed; decision of Court of Appeals otherwise affirmed; judgments of circuit court affirmed March 25, 2011

MENASHA FOREST PRODUCTS CORPORATION,
*Respondent on Review,*

*v.*

CURRY COUNTY TITLE, INC.,
and Transnation Title Insurance Company,
*Petitioners on Review.*

(CC 06CV0844; CA A137464; SC S058450)

249 P3d 1265

Jonathan M. Radmacher, McEwen Gisvold LLP, Portland, argued the cause and filed the brief for petitioners on review.

Gary Roberts, Schwabe, Williamson & Wyatt, P.C., Portland, argued the cause and filed the brief for respondent on review.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

** Gillette and Landau, JJ., did not participate in the consideration or decision of this case.

DURHAM, J.

**DURHAM, J.**

The issue in this action is whether defendants are entitled to an award of attorney fees against plaintiff and, if so, the amount of the award. An escrow contract between plaintiff Menasha Forest Products Corporation and defendant Curry County Title, Inc. (CCT) provided that if CCT prevailed in an action based on the contract, CCT would be entitled to "reasonable attorney fees expended or incurred[.]" Plaintiff brought an action for breach of contract against CCT, and for negligence and declaratory relief against CCT and its principal, Transnation Title Insurance Company (Transnation). Defendants prevailed and sought attorney fees. The same attorney had represented both CCT and Transnation in the action, and Transnation had paid that attorney's fees pursuant to an agency agreement between CCT and Transnation.

This case requires us to determine the effect of that third-party payment on CCT's contractual right to recover attorney fees from plaintiff. The trial court determined that Transnation's payment did not affect CCT's entitlement to attorney fees; it awarded $31,449.85 in attorney fees to defendants. The Court of Appeals disagreed, and determined that CCT's entitlement to attorney fees was limited by the terms of the agency agreement, quoted below, between CCT and Transnation; it reduced the attorney fee award to $2,500. *Menasha Forest Products Corp. v. Curry County Title*, 234 Or App 115, 126-27, 227 P3d 770 (2010). On review, we conclude, as did the trial court, that Transnation's payment of the attorney fees had no effect on CCT's entitlement to an attorney fee award under the escrow contract. We also agree with the trial court that Transnation, which prevailed in this action, also may recover its reasonable attorney fees unreduced in the manner described by the Court of Appeals.

CCT provides escrow and other services related to the conveyance of real property. Before 2004, CCT entered into an agency agreement with Transnation under which Transnation, as principal, would provide title insurance for CCT's escrow customers and CCT, as agent, would indemnify Transnation for certain losses, including attorney fees and

costs of litigation, incurred by Transnation. The agency agreement provided, in part:

"13.   Liability of AGENT; Insurance

   "a)   Agent shall be liable to COMPANY for, and hereby agrees to indemnify the COMPANY against all loss, cost or expense, including attorney's fees and costs of litigation, incurred by the COMPANY and arising from

      "1.   the fraud, misconduct or gross negligence of AGENT or any agent, servant or employee of AGENT; or

      "2.   the failure of AGENT to comply with the terms of this Agreement or with the rules, regulations or instructions given to AGENT by COMPANY; or

      "3.   any loss or misapplication of funds, documents or other things of value by AGENT or any agent, servant or employee of AGENT; or

      "4.   any other actual or alleged act or omission by AGENT or any agent, servant or employee of AGENT, whether or not occurring in connection with the issuance of a Policy, and any Policy issued by AGENT, but the liability of AGENT under this Section 13(a) 4 shall not exceed the first $2,500.00 of such loss, cost or expense."

   In 2004, plaintiff entered into an agreement to sell timber property to a company called Golden Gate Trust. To facilitate that transaction, plaintiff contracted with CCT to provide escrow services, a title report, and title insurance to Golden Gate Trust. The escrow contract, which CCT drafted as a set of instructions from plaintiff to CCT, provides, in part:

      "If you [CCT] are the prevailing party in any action or proceeding between you and some or all of the parties to the escrow, you shall be entitled to all costs, expenses, and reasonable attorney fees expended or incurred in connection therewith."

CCT secured title insurance for the transaction through Transnation. Although plaintiff provided CCT with a correct description of the property to be conveyed, CCT prepared a title report and deed that erroneously included 40 acres of property that plaintiff previously had conveyed to a different buyer. The title insurance policy issued by Transnation also included the previously sold parcel.

After Transnation discovered the error, it wrote to plaintiff asserting that plaintiff had breached its warranty of title and would be required to indemnify Transnation in the event that Transnation was required to pay any claim by Golden Gate Trust. Plaintiff then brought this action for breach of contract against CCT and for a declaratory judgment against both CCT and Transnation. As part of the breach of contract claim against CCT, plaintiff asserted its entitlement to attorney fees under ORS 20.096(1) (2007).[1] In their answer, defendants asserted entitlement to attorney fees pursuant to the escrow contract and ORS 20.096(1). On defendants' motion, the trial court granted judgment on the pleadings in favor of defendants on plaintiff's declaratory judgment claim, concluding that plaintiff had not pleaded a controversy that entitled it to seek a declaratory judgment. Plaintiff then voluntarily dismissed its breach of contract and negligence claims. The trial court entered a general judgment dismissing all of plaintiff's claims without prejudice.

Defendants, through their shared attorney, filed a petition for attorney fees and costs. Defendants asserted that plaintiff was contractually obligated to pay defendants' attorney fees pursuant to the attorney fee provision of the escrow contract, quoted above. Defendants' attorney detailed the legal services performed in his representation of defendants.

---

[1] ORS 20.096(1) (2007) provides:

"In any action or suit in which a claim is made based on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim, whether that party is the party specified in the contract or not, shall be entitled to reasonable attorney fees in addition to costs and disbursements."

The legislature amended ORS 20.096(1) in 2009. Or Laws 2009, ch 285, § 2. The amendments are inapplicable to this case. All references in this opinion to ORS 20.096(1) are to the 2007 version of the statute.

He asserted that, although his "attorney fees were expended for both Defendants, [the] amounts of fees would have been identical if only one Defendant had been sued[.]"

Plaintiff filed objections. Plaintiff argued that Transnation was not entitled to attorney fees because it was not a party to the escrow contract, and that CCT was not entitled to attorney fees because it had not "expended or incurred" any attorney fees within the meaning of the escrow contract. Plaintiff pointed out that defendants' attorney had billed Transnation for all attorney fees associated with the underlying action, pursuant to the agency agreement between CCT and Transnation, and that Transnation had paid those bills.

In a letter opinion, the trial court overruled plaintiff's objections, stating:

"Plaintiff alleged in its declaratory relief claim that [CCT] at all times was acting as the agent for Transnation. Its complaint is filed against both defendants, which are required to defend the matter and which, according to plaintiff, are subject to its request for declaratory relief. [CCT] is entitled to attorney fees under the contract between it and plaintiff in defending this matter and the fact that Transnation may be paying for the attorney fees does not affect [CCT's] right to attorney fees as the prevailing party. *Domingo v. Anderson*, 325 Or 385[, 938 P2d 206] (1997)."

The court entered a supplemental judgment awarding defendants their attorney fees in the amount of $31,449.85, payable by plaintiff.

Plaintiff appealed and assigned error to the trial court's award of attorney fees to defendants. The Court of Appeals agreed with plaintiff that the escrow contract entitled CCT to recover "attorney fees expended or incurred" in connection with the underlying action. The court then resolved the question of whether CCT had "incurred" fees by analyzing the agency agreement between CCT and Transnation:

"[A]ttorney fees are 'incurred' if a party seeking those fees 'has become *liable* to pay them.' The record in this case clearly demonstrates that Transnation, not CCT, was billed

for and paid all attorney fees. Thus, whether the trial court's award was proper turns on whether CCT was 'liable' to pay the attorney fees billed to and paid by Transnation. That inquiry, in turn, depends on the agency agreement between CCT and Transnation."

*Menasha Forest Products Corp.*, 234 Or App at 126 (citation omitted; emphasis in original). Because the agreement between CCT and Transnation limited CCT's indemnification obligation to Transnation to $2,500,[2] the Court of Appeals vacated the trial court's supplemental judgment and remanded for entry of an attorney fee award to defendants in that amount. *Id.* at 127. We allowed review to address the attorney fee issues.[3]

On review, defendants argue that CCT is entitled to attorney fees pursuant to the escrow contract between plaintiff and CCT, regardless of the separate contractual arrangement between CCT and Transnation for the payment of the attorney fees. Defendants propose a rule of law that "[w]here a contract or statute provides that a party will recover reasonable attorney fees, the prevailing party is entitled to an award of attorney fees, without regard to whether a third party paid those attorney fees on behalf of the prevailing party." According to defendants, engaging in an evaluation of who actually *pays* the attorney fees is inconsistent with the contractual term "incurred" and subverts the reciprocity principle contained in ORS 20.096(1).

Plaintiff responds that defendants failed to prove that CCT "expended or incurred" fees as required by the escrow contract, because CCT did not assert either that it paid fees or that it was required to pay fees. Plaintiff also contends that ORS 20.096(1) does not aid defendants because

---

[2] The agency agreement between CCT and Transnation, quoted above, provided three exceptions to that liability limitation, *i.e.*, three situations in which CCT would have been required to indemnify Transnation for all "loss, cost or expense, including attorney[ ] fees" incurred by Transnation. None of those exceptions is presented on the facts of this case.

[3] On appeal, plaintiff also assigned error to the trial court's conclusion that plaintiff had alleged no present controversy that qualified for declaratory relief. The Court of Appeals determined that the trial court did not err in that respect. We limit our review to the attorney fee issue and thus express no opinion on plaintiff's entitlement to declaratory relief.

that statute does not extend the right to recover attorney fees to a nonparty to the underlying contract, such as Transnation. Accordingly, plaintiff contends, the Court of Appeals erred in concluding that defendants were entitled to *any* attorney fee award.[4]

Generally, a party is not entitled to an award of attorney fees unless a statutory or contractual provision specifically authorizes that award. *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1990). Defendants identify two potential sources of authority for an attorney fee award in this case: the attorney fee provision in the escrow contract, and ORS 20.096(1). Under that statute, if a contract entitles one contracting party to recover attorney fees upon prevailing in an action to enforce the provisions of the contract, the prevailing party in the action is entitled to attorney fees whether or not that party is the party specified in the contract. *See Jewell v. Triple B. Enterprises*, 290 Or 885, 887-88, 626 P2d 1383 (1981) (concluding that the statute "requires reciprocity of recovery of attorney fees").

Plaintiff raised different objections to the claim of each defendant to recover attorney fees. For that reason, we examine the trial court's authority to award attorney fees separately for each defendant.

We begin with CCT. The escrow contract between CCT and plaintiff expressly entitles CCT to recover attorney fees "expended or incurred" in connection with this action if CCT prevails in the action. As we shall explain, that provision authorizes the award of attorney fees that the trial court granted. There is no reason, therefore, to consider whether the "reciprocity of recovery" policy embodied in ORS 20.096(1) has any application to CCT's claim for attorney fees.

The legal issue before us is straightforward: Did CCT "expend" or "incur" "attorney fees" in connection with this action if Transnation paid the attorney fees pursuant to its agency agreement with CCT? The escrow contract here

---

[4] In the alternative, plaintiff argues that the Court of Appeals correctly reduced the attorney fee award to $2,500 pursuant to the indemnity agreement between CCT and Transnation. Although plaintiff challenges the trial court's authority to award attorney fees in any amount, plaintiff does not dispute the reasonableness of the amount of attorney fees awarded by the trial court.

does not specially define the key terms of the attorney fee provision. Consequently, we accord those terms their ordinary meaning.

The phrase "attorney fees," when used in the context of an attorney fee award, means "the reasonable value of an attorney's services, whether or not the client was required to pay for those services." *Colby v. Gunson*, 349 Or 1, 5, 238 P3d 374 (2010). That definition accords no significance to the existence of any obligation on a client's part to pay for the attorney's services. *Domingo*, 325 Or at 389; *see Colby*, 349 Or at 5 (discussing holding in *Domingo*.) Our inquiry thus narrows to the question whether the escrow agreement modifies the usual conception of attorney fees noted in *Colby* by incorporating the phrase *"expended* or *incurred* in connection therewith" after the phrase "attorney fees." For ease of analysis, we focus on the second of those alternatives, "incurred," because it provides the most direct answer in this case.

The pertinent definition of "incur" is to "become liable or subject to[.]" *Webster's Third New Int'l Dictionary* 1146 (unabridged ed 2002). "Liable" means "bound or obligated according to law or equity: RESPONSIBLE, ANSWERABLE." *Id.* at 1302. Those definitions, when read together, indicate that a party is entitled to "attorney fees * * * incurred" when the party has become obligated in law or equity, or otherwise is subject to, responsible, or answerable for the payment of the reasonable value of an attorney's services.

The recent decision in *White v. Jubitz Corp.*, 347 Or 212, 219 P3d 566 (2009) provides guidance regarding the meaning of the term "incur."[5] The plaintiff in *White* sought

---

[5] The *Colby* and *White* decisions addressed the meaning of statutory terms, *i.e.*, "attorney fees" and "incurred," respectively, not the terms of a contract. In construing a statute, we typically pursue the intent of the legislature, whereas, in construing a private contract, we endeavor to determine the intent of the contracting parties. As those cases illustrate, however, if the legislature has not supplied a special definition for a statutory term, we ordinarily infer that the legislature intended the term to receive its plain and ordinary definition. *See Colby*, 349 Or at 5 (addressing "plain and ordinary meaning" of the statutory term "attorney fees"); *See White*, 347 Or at 232-34 (examining meaning of statutory term "incurred" according to its ordinary dictionary definition). In a similar manner, we apply the plain and ordinary meaning of the terms "attorney fees" and "incurred" here, because the parties gave no special definitions to those terms in the escrow contract and we assume, therefore, that the parties intended them to carry their plain and ordinary definitions. For that reason, *Colby* and *White* are helpful here even though those cases involved statutory, rather than contractual, interpretation.

medical treatment for an injury. *Id.* at 215. Medicaid provided coverage for the plaintiff's medical costs and capped the amount that the plaintiff's medical providers could charge for their services. *Id.* The issue presented was whether the charges billed to the plaintiff by his medical providers but later written off were "reasonable charges necessarily incurred" under ORS 31.710, such that the plaintiff could claim those charges as economic damages. Applying the plain meaning of the term "incur," the court in *White* rejected the defendant's argument that the plaintiff had not incurred those charges:

> "A plaintiff who is injured and who obtains necessary medical treatment becomes 'liable or subject to' reasonable charges for that treatment and thereby 'incurs' them. ORS 31.710 does not require that a plaintiff also pay or otherwise satisfy those charges. Whether or by what means the plaintiff or a third party satisfies medical charges is a matter between the plaintiff, the third party, and the medical providers."

*Id.* at 234. Accordingly, the court held that ORS 31.710 did not prevent plaintiff from claiming the disputed charges as economic damages.

From our discussion of the ordinary meaning of "incur" and from *White*, we derive two legal principles applicable to this case. First, just as the plaintiff in *White* "incurred" charges for medical treatment upon receipt of that medical treatment, even though the plaintiff was not charged and did not pay the full cost of those services, so too did CCT "incur" attorney fees in this context upon performance of the attorney's services on CCT's behalf, even though CCT did not pay the full cost of the attorney's services. Second, whether or by what means a party to a legal action (or someone else) pays an attorney's bill has no bearing on the question of whether the party "incurred" attorney fees. *Domingo*, 325 Or at 389-90. The act or condition that causes a party to incur, or become liable for or subject to, an attorney fee is legally distinguishable from the act of paying for or otherwise satisfying a liability for that fee. Plaintiff's argument that a party does not incur attorney fees when those fees are billed to and paid by a third party fails because it blurs that distinction. Plaintiff, the losing party in this action, may not take advantage of

CCT's separate agreement with Transnation that protects CCT, in whole or in part, from the burden of paying the full cost of attorney fees that CCT incurred. Under the circumstances in this case, CCT remained answerable for the cost of the attorney's services, whether or not the attorney billed CCT, if Transnation, for some reason, was unable to pay.

With the foregoing legal discussion in mind, we return to the facts of this case. CCT received legal services from an attorney representing both CCT and Transnation in the defense of an action under the escrow contract. Upon performance of those legal services, CCT "incurred" attorney fees, valued by the trial court at $31,449.85. As noted, the attorney submitted his statement for those services to Transnation and Transnation paid for the services, all in accordance with the agency agreement between CCT and Transnation. The agency agreement governs the rights and liabilities between CCT and Transnation regarding attorney fees, but it has no effect on CCT's ultimate responsibility for the reasonable value of the legal services that the attorney performed for CCT.[6] Accordingly, we hold that the Court of Appeals erred in reducing the amount of CCT's attorney fee award. Under the escrow contract, CCT is entitled to recover the full amount of reasonable attorney fees incurred, *i.e.*, $31,449.85.[7]

Finally, we address Transnation's entitlement to an award of attorney fees. Transnation does not seek an additional award of fees separate and apart from the award of fees to CCT. The question, then, is whether the trial court erred in including Transnation as a judgment creditor with CCT on the award of attorney fees.

---

[6] Plaintiff has focused its arguments about whether CCT "incurred" attorney fees on the assumed legal effect of Transnation's payment of the attorney's bills. To the extent that plaintiff contends that Transnation's agency agreement protected CCT from the outset of this litigation from incurring liability for attorney fees, we disagree. Notwithstanding the agency agreement, CCT "incurred" liability for attorney fees, under the theory of *quantum meruit*, and perhaps other theories, upon performance of the legal services on CCT's behalf. We do not address that question further, beyond that observation, because the parties did not address it before the trial court or the Court of Appeals.

[7] Whether the agency agreement requires CCT to pay any of the proceeds of the attorney fee award to Transnation is not an issue presented by this case.

Plaintiff contends that the escrow contract does not name Transnation as a party to that contract and, therefore, the contract does not authorize an award of attorney fees to Transnation. The trial court rejected plaintiff's argument, reasoning that plaintiff had alleged in its claims that, at all times, CCT was the agent for Transnation. The court also concluded that Transnation's agency relationship with CCT entitled Transnation to recover attorney fees from plaintiff in accordance with the escrow contract. The record confirms that CCT was Transnation's agent in the property transaction.

Plaintiff does not come to grips with the legal consequences of the trial court's determination that CCT was Transnation's agent in the property transaction. The premise of the trial court's ruling was that a principal in Transnation's position acquires a right to enforce the attorney fee provision of the contract even if the contract does not so provide and even if the principal is not a signatory to the contract. On review, plaintiff presents no argument or authority suggesting that the trial court's premise was incorrect.

The undisputed fact of the agency relationship between Transnation and CCT refutes plaintiff's claim that Transnation was a stranger to the contract. In the absence of some demonstration by plaintiff that Transnation's status as CCT's principal included no authority to enforce its agent's contract, the trial court did not err in overruling plaintiff's objection to Transnation's petition for attorney fees. As a consequence, the trial court correctly awarded attorney fees to Transnation, and the Court of Appeals erred in requiring a reduction in the award of attorney fees to which Transnation was entitled.

The decision of the Court of Appeals on attorney fees is reversed. The decision of the Court of Appeals is otherwise affirmed. The judgments of the circuit court are affirmed.